**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN and JANE DOE A, individually and as parents and next friends of DOE CHILD A, a minor; JOHN and JANE DOE B, individually and as parent and next friends of DOE CHILD B, a minor; | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) | No. |
| PLAINFIELD COMMUNITY CONSOLIDATED SCHOOL DISTRICT 202; MICHAEL MODERHACK, individually and as an agent of District 202; JON PEREIRO, individually and as an agent of District 202; and VINCENT VASQUEZ, individually and as agent of DISTRICT 202; | ) ) ) ) ) ) ) ) | **PLAINTIFFS DEMAND TRIAL BY JURY** |
| Defendants. | ) ) ) | |

**COMPLAINT AT LAW**

NOW COME the Plaintiffs, JOHN and JANE DOE A, individually and as Parents and Next Friends of DOE CHILD A, and JOHN and JANE DOE B, individually and as Parents and Next friends of DOE CHILD B, a minor (collectively "Plaintiffs"), by and through their attorneys, ROMANUCCI & BLANDIN, LLC, and complaining against Defendants, PLAINFIELD COMMUNITY CONSOLIDATED SCHOOL DISTRICT 202; MICHAEL MODERHACK, individually and as an agent of District 202; JON PEREIRO, individually and as an agent of District 202; VINCENT VASQUEZ, individually and as an agent of District 202; (collectively "Defendants"), pleading hypothetically and in the alternative, state as follows:

**JURY DEMAND**

1. The Plaintiff hereby demands trial by jury.

**NATURE OF ACTION**

1

2.      This cause of action arises out of the hazing, harassment, bullying, abuse, and other unlawful treatment of Doe Child A and B caused by Defendant PLAINFIELD COMMUNITY CONSOLIDATED SCHOOL DISTRICT 202, Defendant Coaches MODERHACK, PEREIRO, and VASQUEZ, on October 17, 2019, at or near the boys' locker room located at Plainfield Central High School, Village of Plainfield, County of Will, Illinois.

3.      This cause of action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of state law and through state law claims of willful and wanton conduct of DOE CHILD A's and DOE CHILD B's rights as secured by the United States Constitution.

4.      This cause of action is for money damages brought pursuant to 42 U.S.C. § 1983, the Fourteenth Amendment to the United States Constitution, and Illinois state law against Defendant Coaches MODERHACK, PEREIRO, and VASQUEZ and PLAINFIELD COMMUNITY CONSOLIDATED SCHOOL DISTRICT 202.

5.      The subject hazing rituals and traditions are a form of bullying and have been part of the culture of the Plainfield Central High School Football Team for years. The teams' coaches have sanctioned these rituals. Indeed, the Plaintiffs are but a fraction of the students who have been physically and sexually assaulted pursuant to this hazing ritual. In addition to seeking damages to compensate Plaintiffs for their psychological injuries, DOE CHILD A, who still attends Plainfield Central, seeks injunctive relief that would put an end to the hazing rituals, so that neither they nor future members of the Plainfield Central Football team will be subjected to the same abuses Plaintiffs have suffered.

6.   This is a tort action brought by two students at Plainfield Central High School located in Plainfield, Illinois. Both students were forced to endure hazing, harassment, bullying, abuse amounting to assaults by members of Plainfield Central High School Football Team. These assaults were part of longstanding and prevalent hazing rituals and traditions known as "Code Blue" to Defendant coaches long before the dates of Plaintiffs' assaults.

## JURISDICTION AND VENUE

7.   This Court has jurisdiction over federal questions pursuant to 28 U.S.C. §1331 and the redress of violations of civil rights pursuant to 28 U.S.C. §1343, as well as supplemental jurisdiction over Illinois state law claims pursuant to 28 U.S.C. §1367.

8.   Venue is proper in this Court under 28 U.S.C. §1391(b) because all incidents, events, and occurrences giving rise to this action occurred in the Northern District of Illinois. Moreover, upon information and belief, all of the parties reside in this Judicial District.

## THE PARTIES

**Plaintiffs**

9.   Plaintiffs JOHN and JANE DOE A, individually and as parents and next friends of DOE CHILD A, are residents of the City of Joliet, Will County, Illinois.

10.  Plaintiff DOE CHILD A is a minor and is a resident of the City of Joliet, Will County, Illinois. JOHN DOE A attended Plainfield Central High School at all relevant times.

11.  Plaintiffs JOHN and JANE DOE B, individually and as parents and next friends of DOE CHILD B, are residents of the Village of Plainfield, Will County, Illinois.

12.     Plaintiff DOE CHILD B is a minor and is a resident of the Plainfield, Will County, Illinois. JOHN DOE B attended Plainfield Central High School at all relevant times and through October 18, 2019.

**Defendants**

13.     Defendant PLAINFIELD COMMUNITY CONSOLIDATED SCHOOL DISTRICT 202 (hereinafter "DISTRICT 202"), is a municipal corporation existing by and under the laws of the State of Illinois, with its principal place of business located in Plainfield, Will County, Illinois.

14.     Defendant DISTRICT 202 is the governing entity having authority over Plainfield Central High School.

15.     Defendant MICHAEL MODERHACK (hereinafter "MODERHACK"), was an agent of DISTRICT 202 and was a football coach at Plainfield Central High School at all relevant times. MODERHACK has been employed by DISTRICT 202 in that position at all relevant times.

16.     Defendant JON PEREIRO (hereinafter "PEREIRO"), was an agent of DISTRICT 202 and was the head varsity football coach at Plainfield Central High School at all relevant times. Defendant PEREIRO has been employed by DISTRICT 202 in that position at all relevant times.

17.     Defendant VINCENT VASQUEZ (hereinafter "VASQUEZ"), was an agent of DISTRICT 202 and was a football coach at Plainfield Central High School at all relevant times. Defendant VASQUEZ has been employed by DISTRICT 202 in that position at all relevant times.

## FACTUAL ALLEGATIONS

### Plainfield Central High School Football Traditions

18. Plainfield Central High School has had longstanding issues involving hazing and bullying of a sexual nature within its Varsity, Sophomore, and Freshman football teams (hereinafter collectively referred to as "Plainfield Central Football Team").

19. An enduring tradition of the Plainfield Central Football Team is a hazing ritual known by its coaches, including Defendants MODERHACK, PEREIRO, and VASQUEZ, and players as a "Code Blue."

20. "Code Blue", refers to a hazing ritual where Varsity members of the Plainfield Central Football Team submit selected Freshman members of the Team to harassment and/or assaults in the locker room, varying in nature but often including forcing Freshmen to the ground and pushing a broom stick between and through their buttocks resulting in penetration; and/or forcing Freshmen to strip and allow themselves to be covered in soap and beaten up in the locker room shower with the water running.

21. On and before October 16, 2019, Defendants MODERHACK, PEREIRO, and VASQUEZ knew that senior members of the Plainfield Central Football Team would subject Freshmen members to the hazing ritual known as "Code Blue."

22. Often during a "Code Blue," Varsity members of the Plainfield Central Football team would then give Freshmen a "choice": either forcibly push a broom between and through their buttocks resulting in penetration, or allow Varsity members to forcibly penetrate them with the broom.

23. If Freshmen would refuse to do it themselves, Varsity members of the team would violently throw selected Freshmen teammates to the ground.

5

24.     After throwing selected Freshmen members of the Plainfield Central Football Team to the ground, senior members of the team would hold the Freshmen down on the ground.

25.     A senior member of the team would then grab a broom and walk towards the Freshmen team members being held on the ground.

26.     The senior holding the broom would then force the broomstick between the buttocks of the Freshmen team member, resulting in penetration without his consent.

27.     "Code Blue" is considered a team bonding exercise and a rite of passage on the Plainfield Central Football Team.

28.     "Code Blue" is and was a tradition that was meant to make freshman members feel like a part of the team.

29.     Hazing acts such as these were done with the knowledge of the football coaching staff stemming as far back as 2014.

30.     The social pressure and bullying at such events are so severe that unwilling participants are forced to take part in acts that are assaultive, illegal, and often sexual in nature.

31.     Upon information and belief, former survivors and victims of these sexual assaults are pressured into accepting these sexual assaults as an essential team bonding exercise.

32.     Involvement in said traditions is and has been widespread throughout the football program.


**Plainfield Community Consolidated School District 202 Policies**

33.     Defendant DISTRICT 202 Sets out in its handbook categories of student conduct defined as "offenses" for which student may be subject to discipline.

34.     Students of DISTRICT 202 may be disciplined for misconduct that occurs on DISTRICT 202 property.

35.     Offenses in the District 202 Student Handbook are divided into three "levels" according to the severity of the conduct at issue and the available disciplinary action for the corresponding conduct.

36.     Level 1 Offenses may result in detentions, ALC [Alternative Learning Center] assignment, and loss of privileges. The District 202 Student Handbook instructs teachers, supervisors, and administrators to "respond based on the circumstances and actions of the student(s)."

37.     Level 2 Offenses "require the attention of the administration because they are too disruptive, too frequent, or too serious to be handled by school staff members while they are supervising or teaching other students."

38.     Level 2 Offenses can be met with a punishment of detentions, ALC assignment, out of school suspension, Refocus, and loss of privileges.

39.     "Refocus" refers to "a one or two day in-school intervention designed to assist students in processing behavioral choices and the impact on their academic, social and emotional well-being."

40.     Classified as a "Level 2" Offense is "bullying/harassment," which is defined as: "severe or pervasive conduct that is repeatedly directed towards a specific student. The repeated behavior is reasonably predicted to place the student in fear of harm, detrimentally affect physical or mental health, substantially interfere with academic performance, or substantially interfere with participation in or benefit from school."

41.     Students at DISTRICT 202 who are behaving in any way that is disruptive to the school environment or making physical contact that negatively impacts another student or the school environment are guilty of a "Level 2 Offense."

42.     Also classified as a "Level 2" Offense is "Inappropriate Physical Contact: Making physical contact that negatively impacts another student or the school environment.

43.     Level 3 Offenses can be met with a punishment of: the "Catalyst Program, out-of-school suspension, recommendation for alternative placement or expulsion up to two (2) calendar years from DISTRICT 202. Any illegal actions will also be referred to the local police department."

44.     The "Catalyst Program" is a one-time intervention offered at the discretion of the assistant principal in charge of discipline based on specific criteria for students facing "suspendable" offenses. Its mission is to coordinate school, home, and community resources to help students manage behaviors that endanger their safety, or put them at risk for academic failure. The program is a purposeful attempt to apply multiple intervention strategies that empower the student to successfully navigate into a positive school environment."

45.     Classified as a "Level 3" Offense are the following categories of conduct: "Assault to Student: threatening to physically or mentally harm another student"; "Battery to Student: unwanted physical touching of a student, either directly, indirectly, or with a weapon or dangerous object"; "Fighting: engaging in physical contact or behavior with the purpose of inflicting harm to another person"; "Gross Misconduct: any conduct, behavior, or activity which causes or may reasonably lead school authorities to forecast substantial injury, disruption, or interference with school environment or the rights of

8

other students or school personnel"; and "Sexual Harassment: any unwanted unwelcome sexual advances, physical contact, inappropriate touching, verbal, non-verbal or written remarks towards students, staff, or others in the school community."

46.     Beyond the 3 levels of offenses or offensive conduct set forth in the Handbook and applicable to all students, DISTRICT 202 requires its student athletes to adhere to what's known as its "Athletic Code."

47.     Adherence to the "Athletic Code" is a requirement for all student athletes at Plainfield Central High School.

48.     The District 202 Student Handbook instructs students that "It is the responsibility of the coaches and sponsors to inform participants of the Code and to enforce the Code in a fair and consistent manner. It is the participant's responsibility to be aware of the Code and to adjust behavior accordingly so that it becomes unnecessary for a coach or sponsor to have to enforce the code."

49.     Defendant DISTRICT 202 policy prohibits its student-athletes from activities involving harassment, hazing, and bullying, as defined by school policy.

50.     Violations of the DISTRICT 202 "Athletic Code" which may result in disciplinary action include:

- harassment, hazing, or bullying;
- assault or battery;
- gross misconduct; and/or
- Other major violations as defined in student handbook.

Students found guilty of violating the Athletic Code will be subject to a quarter season suspension for a first offense, a half season for a second offense, one calendar year for a third offense, and for the remainder of the athlete's career for a fourth offense.

51.     The Athletic Code mandates that athletes must attend all practices and games while serving athletic suspensions.


**Doe Child A & B are assaulted by Varsity Plainfield Central Football Team members**

52.     DOE CHILD A & B began attending Plainfield Central High School on the first day of the 2019-2020 academic year.

53.     On or about September 2019, DOE CHILD A & B joined the Plainfield Central High School football team.

54.     During practices and games during the 2019 Plainfield Central High School football season, coaches would not monitor the locker room, despite knowledge of past hazing and assaults.

55.     On October 16, 2019, two unidentified Freshmen members of the Plainfield Central High School football team were sexually assaulted with a broomstick by unidentified assailants in the Plainfield Central football locker room.

56.     On the afternoon of October 17, 2019, the Plainfield Central High School football team was holding football practice.

57.     One unidentified Freshman member of the Plainfield Central Football team was sexually assaulted with a broomstick in the manner described above, and "tea-bagged" by a Varsity player prior to the end of practice at around 3 p.m., on October 17, 2019.

58.     The Varsity Football practice ended at around 4:45 p.m., and the players were sent to the locker room with coaches on staff to monitor, as required by school policy.

59.     On the afternoon of October 17, 2019, the Plainfield Central High School Football Freshman "A Team", including members DOE CHILD A, B, and a third Freshman

team member, DOE CHILD C, had just finished practice and the "B Team" was preparing for the Freshmen B game, which was set to begin at 5:00 p.m.

60.     DOE CHILD A, B, and C had just finished practice on the afternoon of October 17, 2019 and were in the Plainfield High School Football locker room when suddenly 10-20 members of the varsity team stormed into the locker room, including four varsity members, hereinafter referred to as "Varsity Assailants."

61.     At that time, the Varsity players were taking part in traditions known as "grab-assing" and "nut tapping."

62.     At that time, a sophomore member of the team looked toward DOE CHILD A and told him to "run."

63.     DOE CHILD C then fled the locker room.

64.     The members of the Varsity team then blocked all routes of escape from the locker room.

65.     Between 10-20 members of the varsity team then surrounded  DOE CHILD A & B and DOE CHILD A attempted to flee.

66.     Three Varsity Assailants and others shouted "Code Blue!"

67.     Three Varsity Assailants and others shouted "Get the Broom!"

68.     DOE CHILD A tried to jump over a locker in an attempt to escape.

69.     DOE CHILD A slipped as he tried to escape.

70.     DOE CHILD A was dragged down from the lockers by a Varsity player.

71.     DOE CHILD B was told by the four Varsity Assailants and others "get down and take it or we'll make you take it."

72.     The four Varsity Assailants and others, repeatedly shouted "get him in the taint!"

73. The four Varsity Assailants then grabbed DOE CHILD A & B and violently threw them to the ground.

74. Three Varsity Assailants then held DOE CHILD A & B down on the ground.

75. One Varsity Assailant then grabbed a broom from beside his locker.

76. One Varsity Assailant then forced the broom handle between and through the buttocks of DOE CHILD A & B, resulting in penetration and causing the broom handle to snap in two.

77. Not a single teammate of DOE CHILD A & B intervened on their behalf.

78. The Varsity team members then released DOE CHILD A & B.

79. A sophomore student then told DOE CHILD A "You didn't get it as hard as we did, you had it easy."

80. A Varsity team member then told DOE CHILD A "Now you're a 'G.'"

81. DOE CHILD A then left the locker room and immediately informed Defendant MODERHACK of the assault.


**Aftermath of the Assaults of Doe Child A & B**

82. On the evening of October 17, 2019, Defendants MODERHACK, PEREIRO, and VASQUEZ were working as coaches for the Plainfield Central Varsity Football team.

83. Prior to 5:15 p.m., an "A Team" player informed Defendant VASQUEZ that several "A Team" members were getting broom sticks forced between and through their buttocks resulting in penetration in the locker room.

84.     Defendants VASQUEZ, MODERHACK, and PEREIRO recognized the term "Code Blue" and knew that it referred to specific prior instances of sexual assault of Freshmen members of the Plainfield Central Varsity Football Team.

85.     As a result of Defendant VASQUEZ's recognition of the term "Code Blue" and knowledge of specific prior instances of sexual assault of team members, Defendant VASQUEZ called Defendant MODERHACK on the phone, and stated an "A Team" player mentioned that "A Team" players were not out on the field supporting their "B Team" yet because they were still in the locker room getting broom sticks forced between their buttocks resulting in penetration.

86.     Several minutes later, Defendants VASQUEZ and PEREIRO went into the locker room and found it empty.

87.     Thereafter, Defendant MODERHACK was informed that a "Code Blue" had been called, and that DOE CHILD A and DOE CHILD B had been attacked.

88.     Approximately fifteen minutes later, DOE CHILD B told Defendant MODERHACK that at least fifteen (15) Varsity players surrounded and attacked him and DOE CHILD A in the manner described above.

89.     Defendant MODERHACK made DOE CHILD B repeat his description of the occurrence to Defendant PEREIRO.

90.     At around 6:00 p.m., DOE CHILD A told Defendant MODERHACK that a "Code Blue" had been called and that he had been penetrated by the broom stick.

91.     At approximately 6:15 p.m., three of the Varsity Assailants. were allowed to approach DOE CHILD A while he was standing on the sideline of the "B Team" game with Defendant MODERHACK.

92. Three of the Varsity Assailants then accused DOE CHILD A of snitching and telling his mother about the attack.

93. DOE CHILD A denied snitching or saying anything about the attack.

94. One Varsity Assailant informed DOE CHILD A that this had happened to him and other Assailants as Freshmen

95. Three of the Varsity Assailants then remained on the scene near the south endzone Wile DOE CHILD A & B were present.

96. The Varsity team member who assaulted DOE CHILD A & B then approached Defendant MODERHACK and DOE CHILD A while they were talking about the assault and said "it was just a joke."

97. After practice had ended Defendant PEREIRO called JOHN and JANE DOE A and informed them that there had been "an incident" in the football locker room and that there would be a meeting the next morning, but did not report that DOE CHILD A had been sexually assaulted.

98. Later that night, DOE CHILD A's brother and sister then told JOHN and JANE DOE A that the aforementioned acts had been forced on DOE CHILD A.

99. After practice had ended Defendant PEREIRO called JOHN DOE B and informed him that there had been "an incident" in the locker room but did not report that DOE CHILD B had been sexually assaulted.

100. It is a custom, tradition, ritual and/or long-standing practice for members of the Plainfield Central Varsity Football Team to target, engage in hazing of a sexual nature, and shove a broomstick between and through the buttocks of Freshmen members of the

team resulting in penetration, and this was well-known by Defendants MODERHACK, PEREIRO, and VASQUEZ.

101. Defendants MODERHACK, PEREIRO, and VASQUEZ knew that "Code Blue" was a long-standing custom, tradition, or practice within the Plainfield Central Varsity Football that included sexually assaulting Freshmen members of the team as a rite of passage and bonding ritual.

102. Defendants MODERHACK, PEREIRO, and VASQUEZ knew, or should have known, that the Plainfield Central High School Varsity Football Team had a long-standing custom, tradition, or practice of assaulting team members in a sexual manner.

103. Defendants MODERHACK, PEREIRO, and VASQUEZ sanctioned and did nothing to end the custom, tradition, or practice of assaulting team members in a sexual manner.

104. Defendants MODERHACK, PEREIRO, and VASQUEZ perpetuated the custom, tradition, or practice of engaging in hazing of a sexual nature and assaulting team members in a sexual manner by allowing these assaults to continue despite having knowledge of them.

105. Years before DOE CHILD A & B were hazed at Plainfield Central High School, Defendants knew, or should have known, that Plainfield Central High School's football team had a custom, tradition, or practice of engaging in hazing of a sexual nature.

106. In the years before DOE CHILD A & B were hazed at Plainfield Central High School, Defendants took no action to end, and tacitly sanctioned the aforementioned custom, tradition, or practice of engaging in hazing of a sexual nature.

**Plainfield Central High School Meeting on October 18, 2019**

107.　Upon information and belief, the Plainfield Central High School administration and football coaching staff took no further action regarding addressing hazing on the football team until after the incident occurring on October 17, 2019.

108.　On October 18, 2019, parents of the students in the Plainfield Central Football program that were present during the October 17, 2019 incident, including JANE DOE A and JOHN DOE B, were asked to attend a meeting addressing the incident on October 18, 2019.

109.　On October 18, 2019 JANE DOE A and DOE CHILD A, and JOHN DOE B and DOE CHILD B attended the meeting relating to the hazing incident at Plainfield Central High School.

110.　Defendants MODERHACK, PEREIRO, and VASQUEZ, as well as Matt Ambrose, the Athletic Director for Plainfield Central High School, Mark Krusz, the Assistant Principal for Plainfield Central High School, and Matt Lehman, resource officer for Plainfield Central High School, were present during the October 18, 2019 meeting.

111.　When JANE DOE A and DOE CHILD A arrived to the meeting, one of the Varsity Assailants was waiting outside the room where the meeting would be held.

112.　When JANE DOE A, DOE CHILD A, JOHN DOE B, and DOE CHILD B arrived, Mr. Krusz asked them if they needed anything, but refused to address the October 17, 2019 incident.

113.　Shortly thereafter, another parent asked Mr. Krusz if the students were monitored in the locker room at the time of the incident.

114.　In response, Mr. Krusz told the parents that he had no idea what happened.

115. In response, Mr. Krusz said "oh boy" and nothing more.

116. Thereafter, JANE DOE A asked Mr. Krusz whether DISTRICT 202 had any monitoring policies in place for its locker rooms.

117. In response, Mr. Krusz admitted that a coach, teacher, or faculty member is always required to be in the locker rooms when students are present.

118. Defendant MODERHACK then interrupted and said that previously a coach would be present in the locker rooms, but students complained that they were uncomfortable with the monitoring.

119. As the parents demanded answers, Mr. Lehman stated "I can't protect 2,000 kids."

120. The parents and students were then separated.

121. Defendants MODERHACK, VASQUEZ, PEREIRO, and Mr. Ambrose, Mr. Krusz, and Officer Lehman placed JANE DOE A and DOE CHILD A alone in a room apart from JOHN DOE B and DOE CHILD B.

122. Defendants MODERHACK, VASQUEZ, PEREIRO, and Mr. Ambrose, Mr. Krusz, and Officer Lehman, then separated DOE CHILD B from his parent, JOHN DOE B and placed him in a room with DOE CHILD C without his parents present.

123. After being separated from JOHN DOE B, DOE CHILD B was directed to give a written statement by Officer LEHMAN without his legal guardian present.

124. At the conclusion of the meeting, JANE DOE A and JOHN DOE B were told to follow up with Officer Lehman regarding the status of the investigation into the assaults.

125. On October 21, 2019, JANE DOE A called Officer Lehman and asked what the school was doing to keep DOE CHILD A safe.

126. Officer Lehman stated that he couldn't tell JANE DOE A whether any of the students responsible for the assaults had been punished or sanctioned, but that DISTRICT 202 took the allegations very seriously.

127. Similarly, despite following up numerous times regarding the status of any investigation or punishment for the students responsible, and assurance that Officer Lehman ultimately stopped returning JOHN and JANE DOE B's phone calls.

128. JOHN and JANE DOE B only learned that the students responsible had been punished in any way through media reports surrounding the incident.

129. Upon information and belief, four of the students who participated in the assault were punished only with a three-day suspension.

130. Other members of the football team responsible for intimidating, coercing, bullying and forcing the performance of sexual acts of hazing on October 17, 2019 have received little to no punishment.

131. Since the outset of the investigation by the Plainfield Central High School administration and when rumors of the incidents involving the Plainfield Central Football Team came to light, the students who were forced to take part have been subjected to retaliation and have been actively sought out by their teammates.

132. Since the date of the occurrence DOE CHILD A & B have been subjected to widespread bullying, harassment, and threats.

133. Since the occurrence, both in person and on social media, DOE CHILD A has been called a "sissy", has been gaslighted by students telling him that "nobody raped" him, and ridiculed because he "went and cried 'rape.'"

134. Since the occurrence, DOE CHILD B has been subjected to in person and online harassment and bullying, including his peers chanting "broomstick" at him while competing in basketball games.

135. Since the occurrence, members of the Plainfield Central football team have threatened DOE CHILD B by saying "we're going to crush your head in."

136. For a significant amount of time after the occurrence, Defendant DISTRICT 202 refused to sign a release for the Illinois High School Association that would allow DOE CHILD B to compete for another team.

137. For a significant amount of time after the occurrence, Defendant DISTRICT 202 refused to grant a Student Transfer Request to DOE CHILD A.

138. As a result, DOE CHILD A and B are now known within their community to be survivors of sexual assault and hazing.

139. In the years before DOE CHILD A or B was subjected to hazing that is sexual in nature, the Plainfield Central High School administration and coaching staff took no action to end, and tacitly sanctioned, the custom, tradition, or practice of assaulting team members in a sexual manner.

**COUNT I—WILLFUL AND WANTON CONDUCT—*RESPONDEAT SUPERIOR***
**(John and Jane Doe A, individually and as parents and next friends of Doe Child A, a minor vs. District 202)**

140. Plaintiffs incorporate by reference all preceding paragraphs.

141. During the 2019-2020 academic year, DISTRICT 202; by and through its actual agents, apparent agents, employees and/or servants: Defendants MODERHACK, PEREIRO, and VASQUEZ; had a duty to refrain from acting with an utter indifference and/or

conscious disregard for the safety of District 202 students attending Plainfield Central High School, including DOE CHILD A.

142. On and prior to October 17, 2019, by and through its actual agents, apparent agents, employees and/or servants Defendants MODERHACK, PEREIRO, and VASQUEZ; DISTRICT 202 recognized the term "Code Blue" and understood it to refer to specific prior instances where senior members of the Plainfield Central Varsity Football Team sexually assaulted Freshmen members of the team.

143. On and prior to October 17, 2019, by and through its actual agents, apparent agents, employees and/or servants Defendants MODERHACK, PEREIRO, and VASQUEZ; DISTRICT 202 recognized the term "Code Blue" to refer to the custom, tradition, or practice of senior members of the Plainfield Central Varsity Football Team assaulting Freshmen members of the team in a sexual manner.

144. DISTRICT 202's written policies and procedures, undertaking to implement and comply with Illinois' Bullying Prevention Act (105 ILCS 5/27-23.7), establish a minimum standard of conduct for DISTRICT 202 employees and agents, Defendants MODERHACK, PEREIRO, and VASQUEZ.

145. DISTRICT 202 purports to follow a policy that prohibits hazing or any kind of bullying or aggressive behavior that does physical or psychological harm to a staff person or another student. Prohibited conduct specifically includes, without limitation, any use of violence, intimidation, force, threats, stalking, harassment, sexual harassment, public humiliation, retaliation, hazing, bullying, or other comparable conduct during any school sponsored education program or activity and while at the school or on its property.

146.   DISTRICT 202 purports to follow policies that require:

   a. Monitoring of students any time students are present in Plainfield Central High School locker rooms;
   b. Students who violate the rights of others or district policies will be subject to disciplinary measures;
   c. Bullying during any school–sponsored activity and while on school property be prohibited;
   d. Prompt investigation and addressing of reports of bullying after reports of bullying are received;
   e. Prohibitions on engaging in hazing or urging others to engage in hazing in any form, including intimidation, coercion, threats, harassment, sexual harassment, public humiliation, retaliation, and bullying;
   f. Prohibitions on engaging in sexual activity, including indecent exposure and offensive touching, and violating any criminal law, including assault; and
   g. Prohibitions on taking part in hazing and bullying activities during extracurricular activities and that doing so can result in removal from the activity.

147.   DISTRICT 202, by and through its actual agents, apparent agents, employees and/or

servants: Defendants MODERHACK, PEREIRO, and VASQUEZ breached their duty

to DOE CHILD A in one or more of the following ways:

   a. Knew or should have known that by not monitoring the locker room, acts of bullying, harassment, and sexual assault could occur;
   b. Knew or should have known about the traditions of Plainfield Central High School, which included hazing and bullying of a sexual nature;
   c. Knew or should have known that bullying and hazing was so prevalent that unwilling participants were forced to take part in acts that were assaultive, illegal, and often sexual in nature;
   d. Knew or should have known that their failure to monitor the locker rooms of Plainfield Central High School posed a high probability of serious harm to students, including DOE CHILD A;
   e. Recklessly or consciously disregarded the substantial risks posed by failing altogether to monitor the locker rooms of Plainfield Central High School;
   f. Recklessly or consciously disregarded the substantial risks that actions were perpetrated against DOE CHILD A;
   g. Knew or should have known they were violating DISTRICT 202 policy by allowing the tradition of "Code Blue" to occur and continue unreported; and/or
   h. Was otherwise willful and wanton in their conscious disregard of the safety of Plaintiff.

148.   As a direct and proximate result of these willful and wanton acts and/or omissions,

DOE CHILD A sustained serious injuries and suffered severe emotional distress.

WHEREFORE, Plaintiffs JOHN and JANE DOE A, individually and as parents and next friends of DOE CHILD A, a minor, pray for judgment against DISTRICT 202, for money damages in excess of FIFTY THOUSAND DOLLARS ($50,000), interest on any damages awarded, and costs incurred in bringing this action.

## COUNT II—WILLFUL AND WANTON CONDUCT
**(John and Jane Doe A, individually and as parents and next friends of Doe Child A, a minor vs. Moderhack, Pereiro, Vasquez)**

149.  Plaintiffs incorporate by reference all preceding paragraphs.

150.  During the 2019-2020 academic year, Defendants MODERHACK, PEREIRO, and VASQUEZ had a duty to refrain from acting with an utter indifference and/or conscious disregard for the safety of DISTRICT 202 students attending Plainfield Central High School, including DOE CHILD A.

151.  On and prior to October 17, 2019, Defendants MODERHACK, PEREIRO, and VASQUEZ recognized the term "Code Blue" and understood it to refer to specific prior instances where senior members of the Plainfield Central Varsity Football Team sexually assaulted Freshmen members of the team.

152.  On and prior to October 17, 2019, Defendants MODERHACK, PEREIRO, and VASQUEZ recognized the term "Code Blue" to refer to the custom, tradition, or practice of senior members of the Plainfield Central Varsity Football Team assaulting Freshmen members of the team in a sexual manner.

153.  DISTRICT 202's written policies and procedures, undertaking to implement and comply with Illinois' Bullying Prevention Act (105 ILCS 5/27-23.7), establish a

minimum standard of conduct for DISTRICT 202 employees and agents, Defendants MODERHACK, PEREIRO, and VASQUEZ.

154.   DISTRICT 202 purports to follow a policy that prohibits hazing or any kind of bullying or aggressive behavior that does physical or psychological harm to a staff person or another student. Prohibited conduct specifically includes, without limitation, any use of violence, intimidation, force, threats, stalking, harassment, sexual harassment, public humiliation, retaliation, hazing, bullying, or other comparable conduct during any school sponsored education program or activity and while at the school or on its property.

155.   DISTRICT 202 purports to follow policies that require:

   a.   Monitoring of students any time students are present in Plainfield Central High School locker rooms;
   b.   Students who violate the rights of others or district policies will be subject to disciplinary measures;
   c.   Bullying during any school–sponsored activity and while on school property be prohibited;
   d.   Prompt investigation and addressing of reports of bullying after reports of bullying are received;
   e.   Prohibitions on engaging in hazing or urging others to engage in hazing in any form, including intimidation, coercion, threats, harassment, sexual harassment, public humiliation, retaliation, and bullying;
   f.   Prohibitions on engaging in sexual activity, including indecent exposure and offensive touching, and violating any criminal law, including assault; and
   g.   Prohibitions on taking part in hazing and bullying activities during extracurricular activities and that doing so can result in removal from the activity.

156.   Defendants MODERHACK, PEREIRO, and VASQUEZ breached their duty to DOE CHILD A in one or more of the following ways:

   a.   Knew or should have known that by not monitoring the locker room, acts of bullying, harassment, and sexual assault could occur;
   b.   Knew or should have known about the traditions of Plainfield Central High School, which included hazing and bullying of a sexual nature;

    c. Knew or should have known that bullying and hazing was so prevalent that unwilling participants were forced to take part in acts that were assaultive, illegal, and often sexual in nature;

    d. Knew or should have known that their failure to monitor the locker rooms of Plainfield Central High School posed a high probability of serious harm to students, including DOE CHILD A;

    e. Recklessly or consciously disregarded the substantial risks posed by failing altogether to monitor the locker rooms of Plainfield Central High School;

    f. Recklessly or consciously disregarded the substantial risks that actions were perpetrated against DOE CHILD A;

    g. Knew or should have known they were violating DISTRICT 202 policy by allowing the tradition of "Code Blue" to occur and continue unreported; and/or

    h. Were otherwise willful and wanton in their conscious disregard of the safety of Plaintiff.

157. As a direct and proximate result of these willful and wanton acts and/or omissions, DOE CHILD A sustained serious injuries and suffered severe emotional distress.

WHEREFORE, Plaintiffs JOHN and JANE DOE A, individually and as parents and next friends of DOE CHILD A, a minor, pray for judgment against Defendants MODERHACK, PEREIRO, and VASQUEZ for money damages in excess of FIFTY THOUSAND DOLLARS ($50,000), interest on any damages awarded, and costs incurred in bringing this action.

**COUNT III—WILLFUL AND WANTON CONDUCT—*RESPONDEAT SUPERIOR***
**(John and Jane Doe B, individually and as parents and next friends of Doe Child B, a minor vs. District 202)**

158. Plaintiffs incorporate by reference all preceding paragraphs.

159. During the 2019-2020 academic year, DISTRICT 202; by and through its actual agents, apparent agents, employees and/or servants: Defendants MODERHACK, PEREIRO, and VASQUEZ; had a duty to refrain from acting with an utter indifference and/or conscious disregard for the safety of DISTRICT 202 students attending Plainfield Central High School, including DOE CHILD B.

160. On and prior to October 17, 2019, by and through its actual agents, apparent agents, employees and/or servants Defendants MODERHACK, PEREIRO, and VASQUEZ; DISTRICT 202 recognized the term "Code Blue" and understood it to refer to specific prior instances where senior members of the Plainfield Central Varsity Football Team sexually assaulted Freshmen members of the team.

161. On and prior to October 17, 2019, by and through its actual agents, apparent agents, employees and/or servants Defendants MODERHACK, PEREIRO, and VASQUEZ; DISTRICT 202 recognized the term "Code Blue" to refer to the custom, tradition, or practice of senior members of the Plainfield Central Varsity Football Team assaulting Freshmen members of the team in a sexual manner.

162. DISTRICT 202's written policies and procedures, undertaking to implement and comply with Illinois' Bullying Prevention Act (105 ILCS 5/27-23.7), establish a minimum standard of conduct for DISTRICT 202 employees and agents, Defendants MODERHACK, PEREIRO, and VASQUEZ.

163. DISTRICT 202 purports to follow a policy that prohibits hazing or any kind of bullying or aggressive behavior that does physical or psychological harm to a staff person or another student. Prohibited conduct specifically includes, without limitation, any use of violence, intimidation, force, threats, stalking, harassment, sexual harassment, public humiliation, retaliation, hazing, bullying, or other comparable conduct during any school sponsored education program or activity and while at the school or on its property.

164. DISTRICT 202 purports to follow policies that require:

   a. Monitoring of students any time students are present in Plainfield Central High School locker rooms;

b. Students who violate the rights of others or district policies will be subject to disciplinary measures;

c. Bullying during any school–sponsored activity and while on school property be prohibited;

d. Prompt investigation and addressing of reports of bullying after reports of bullying are received;

e. Prohibitions on engaging in hazing or urging others to engage in hazing in any form, including intimidation, coercion, threats, harassment, sexual harassment, public humiliation, retaliation, and bullying;

f. Prohibitions on engaging in sexual activity, including indecent exposure and offensive touching, and violating any criminal law, including assault; and

g. Prohibitions on taking part in hazing and bullying activities during extracurricular activities and that doing so can result in removal from the activity.

165. DISTRICT 202, by and through its actual agents, apparent agents, employees and/or servants: Defendants MODERHACK, PEREIRO, and VASQUEZ breached their duty to DOE CHILD B in one or more of the following ways:

a. Knew or should have known that by not monitoring the locker room, acts of bullying, harassment, and sexual assault could occur;

b. Knew or should have known about the traditions of Plainfield Central High School, which included hazing and bullying of a sexual nature;

c. Knew or should have known that bullying and hazing was so prevalent that unwilling participants were forced to take part in acts that were assaultive, illegal, and often sexual in nature;

d. Knew or should have known that their failure to monitor the locker rooms of Plainfield Central High School posed a high probability of serious harm to students, including DOE CHILD B;

e. Recklessly or consciously disregarded the substantial risks posed by failing altogether to monitor the locker rooms of Plainfield Central High School;

f. Recklessly or consciously disregarded the substantial risks that actions were perpetrated against DOE CHILD B;

g. Recklessly or consciously disregarded the substantial risks that actions were perpetrated against DOE CHILD A;

h. Knew or should have known they were violating DISTRICT 202 policy by allowing the tradition of "Code Blue" to occur and continue unreported; and/or

i. Was otherwise willful and wanton in their conscious disregard of the safety of Plaintiff.

166. As a direct and proximate result of these willful and wanton acts and/or omissions, DOE CHILD B sustained serious injuries and suffered severe emotional distress.

WHEREFORE, Plaintiffs JOHN and JANE DOE B, individually and as parents and next friends of DOE CHILD B, a minor, pray for judgment against Defendant DISTRICT 202 for money damages in excess of FIFTY THOUSAND DOLLARS ($50,000), interest on any damages awarded, and costs incurred in bringing this action.

## COUNT IV—WILLFUL AND WANTON CONDUCT
**(John and Jane Doe B, individually and as parents and next friends of Doe Child B, a minor vs. Moderhack, Pereiro, and Vasquez)**

167.   Plaintiffs incorporate by reference all preceding paragraphs.

168.   During the 2019-2020 academic year, Defendants MODERHACK, PEREIRO, and VASQUEZ had a duty to refrain from acting with an utter indifference and/or conscious disregard for the safety of DISTRICT 202 students attending Plainfield Central High School, including DOE CHILD B.

169.   On and prior to October 17, 2019, Defendants MODERHACK, PEREIRO, and VASQUEZ recognized the term "Code Blue" and understood it to refer to specific prior instances where senior members of the Plainfield Central Varsity Football Team sexually assaulted Freshmen members of the team.

170.   On and prior to October 17, 2019, Defendants MODERHACK, PEREIRO, and VASQUEZ recognized the term "Code Blue" to refer to the custom, tradition, or practice of senior members of the Plainfield Central Varsity Football Team assaulting Freshmen members of the team in a sexual manner.

171.   DISTRICT 202's written policies and procedures, undertaking to implement and comply with Illinois' Bullying Prevention Act (105 ILCS 5/27-23.7), establish a minimum standard of conduct for DISTRICT 202 employees and agents, Defendants MODERHACK, PEREIRO, and VASQUEZ.

172. DISTRICT 202 purports to follow a policy that prohibits hazing or any kind of bullying or aggressive behavior that does physical or psychological harm to a staff person or another student. Prohibited conduct specifically includes, without limitation, any use of violence, intimidation, force, threats, stalking, harassment, sexual harassment, public humiliation, retaliation, hazing, bullying, or other comparable conduct during any school sponsored education program or activity and while at the school or on its property.

173. DISTRICT 202 purports to follow policies that require:

   a. Monitoring of students any time students are present in Plainfield Central High School locker rooms;
   b. Students who violate the rights of others or district policies will be subject to disciplinary measures;
   c. Bullying during any school–sponsored activity and while on school property be prohibited;
   d. Prompt investigation and addressing of reports of bullying after reports of bullying are received;
   e. Prohibitions on engaging in hazing or urging others to engage in hazing in any form, including intimidation, coercion, threats, harassment, sexual harassment, public humiliation, retaliation, and bullying;
   f. Prohibitions on engaging in sexual activity, including indecent exposure and offensive touching, and violating any criminal law, including assault; and
   g. Prohibitions on taking part in hazing and bullying activities during extracurricular activities and that doing so can result in removal from the activity.

174. Defendants MODERHACK, PEREIRO, and VASQUEZ breached their duty to DOE CHILD B in one or more of the following ways:

   a. Knew or should have known that by not monitoring the locker room, acts of bullying, harassment, and sexual assault could occur;
   b. Knew or should have known about the traditions of Plainfield Central High School, which included hazing and bullying of a sexual nature;
   c. Knew or should have known that bullying and hazing was so prevalent that unwilling participants were forced to take part in acts that were assaultive, illegal, and often sexual in nature;
   d. Knew or should have known that their failure to monitor the locker rooms of Plainfield Central High School posed a high probability of serious harm to students, including DOE CHILD B;

e.  Recklessly or consciously disregarded the substantial risks posed by failing altogether to monitor the locker rooms of Plainfield Central High School;

f.  Recklessly or consciously disregarded the substantial risks that actions were perpetrated against DOE CHILD B;

g.  Recklessly or consciously disregarded the substantial risks that actions were perpetrated against DOE CHILD A;

h.  Knew or should have known they were violating DISTRICT 202 policy by allowing the tradition of "Code Blue" to occur and continue unreported; and/or

i.  Were otherwise willful and wanton in their conscious disregard of the safety of Plaintiff.

175.  As a direct and proximate result of these willful and wanton acts and/or omissions, DOE CHILD B sustained serious injuries and suffered severe emotional distress.

WHEREFORE, Plaintiffs JOHN and JANE DOE B, individually and as parents and next friends of DOE CHILD B, a minor, pray for judgment against Defendants MODERHACK, PEREIRO, and VASQUEZ for money damages in excess of FIFTY THOUSAND DOLLARS ($50,000), interest on any damages awarded, and costs incurred in bringing this action.

**COUNT V—CIVIL RIGHTS VIOLATION UNDER 42 U.S.C § 1983:
SUBSTANTIVE DUE PROCESS**
**(John and Jane Doe A, individually and as parents and next friends of Doe Child A, a
minor vs. Moderhack, Pereiro, Vasquez)**

176.  Plaintiffs incorporate by reference all preceding paragraphs.

177.  That DOE CHILD A has a clearly established right to equal access to all benefits and privileges of a public education and a right to be free from said illegal practices and policies.

178.  That at all relevant times Defendants MODERHACK, PEREIRO, and VASQUEZ were acting under color of state law.

179. The actions and omissions of Defendants MODERHACK, PEREIRO, and VASQUEZ as described above, were arbitrary and capricious, and were not rationally related to any legitimate interest.

180. As a result of Defendants' actions, DOE CHILD A suffered a deprivation of his rights secured to him by the Fourteenth Amendment to the United States Constitution, and is thus entitled to an award of monetary damages from the individual Defendants.

181. DISTRICT 202's written policies and procedures, undertaking to implement and comply with Illinois' Bullying Prevention Act (105 ILCS 5/27-23.7), establish a minimum standard of conduct for DISTRICT 202 employees and agents, Defendants MODERHACK, PEREIRO, and VASQUEZ.

182. DISTRICT 202 purports to follow a policy, outlined in the Handbook, that prohibits hazing or any kind of bullying or aggressive behavior that does physical or psychological harm to a staff person or another student. Prohibited conduct specifically includes, without limitation, any use of violence, intimidation, force, threats, stalking, harassment, sexual harassment, public humiliation, retaliation, hazing, bullying, or other comparable conduct during any school sponsored education program or activity and while at the school or on its property.

183. DISTRICT 202 purports to follow a policy, outlined in its Student Handbook, that requires:

    h. Students who violate the rights of others or district policies will be subject to disciplinary measures;
    i. Bullying during any school–sponsored activity and while on school property be prohibited;
    j. Prompt investigation and addressing of reports of bullying after reports of bullying are received;

k.  Prohibitions on engaging in hazing or urging others to engage in hazing in any form, including intimidation, coercion, threats, harassment, sexual harassment, public humiliation, retaliation, and bullying;

l.  Prohibitions on engaging in sexual activity, including indecent exposure and offensive touching, and violating any criminal law, including assault; and

m.  Prohibitions on taking part in hazing and bullying activities during extracurricular activities and that doing so can result in removal from the activity.

184.  DISTRICT 202 policy was not followed by Defendant SCHOOL DISTRICT 202 employees in that:

a.  Students involved with the hazing, harassment, bullying, abuse, and other unlawful treatment were not subject to adequate disciplinary measures;

b.  Investigations into the allegations by DOE CHILD A were not promptly initiated by the agents and/or employees of Defendant DISTRICT 202;

c.  Students who engaged in the hazing, harassment, bullying, abuse, and other unlawful treatment of DOE CHILD A were allowed to continue participating in practices and be present in the locker room without adequate reprimand;

d.  Upon information and belief, students who engaged in hazing, harassment, bullying, abuse, and other unlawful treatment of DOE CHILD A were not removed from the football team; and/or

e.  Otherwise violated school policy.

185.  DISTRICT 202 Policy, and thereby Illinois law contained in the Bullying Prevention Act, was not being followed at Plainfield Central High School during DOE CHILD A's attendance and was not followed in the case of DOE CHILD A's hazing, harassment, bullying, abuse, and other unlawful treatment, and in this action and omission Defendants MODERHACK, PEREIRO, and VASQUEZ were deliberately indifferent to DOE CHILD A and his subsequent deprivation of rights.

186.  Defendants' deliberate indifference to DOE CHILD A's safety, DISTRICT 202 policy, and the law demonstrate an obvious need for training regarding hazing, harassment, bullying, discipline, reporting obligations, monitoring, policy and legal requirements.

187.  Defendants had a duty to observe and monitor DOE CHILD A during football games, football practices, and inside athletic locker rooms and they failed to do so.

31

188. As a direct and proximate result of the acts and omissions set forth above, DOE CHILD A suffered and continues to suffer a deprivation of his rights secured to him by the Fourteenth Amendment to the United States Constitution, and is thus entitled to an award of monetary damages from the individual Defendants.

189. As a direct and proximate result of the acts and omissions set forth above, DOE CHILD A suffered and continues to suffer severe mental and emotional distress, humiliation, shame, embarrassment, fear, and anxiety and has resulted in permanent damage to his social and emotional well-being, and is thus entitled to an award of monetary damages from the individual Defendants.

WHEREFORE, Plaintiffs JOHN AND JANE DOE A, individually and as parents and next friends of DOE CHILD A, pray for judgment against Defendants MODERHACK, PEREIRO, and VASQUEZ for money damages in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000), interest on any damages awarded, and costs incurred in bringing this action.

**COUNT VI—CIVIL RIGHTS VIOLATION UNDER 42 U.S.C § 1983:
SUBSTANTIVE DUE PROCESS**
**(John and Jane Doe B, individually and as parents and next friends of Doe Child B, a
minor vs. Moderhack, Pereiro, and Vasquez)**

190. Plaintiffs incorporate by reference all preceding paragraphs.

191. That DOE CHILD B has a clearly established right to equal access to all benefits and privileges of a public education and a right to be free from said illegal practices and policies.

192. That at all relevant times Defendants MODERHACK, PEREIRO, and VASQUEZ were acting under color of state law.

193. The actions and omissions of Defendants MODERHACK, PEREIRO, and VASQUEZ as described above, were arbitrary and capricious, and were not rationally related to any legitimate interest.

194. As a result of Defendants' actions, DOE CHILD B suffered a deprivation of his rights secured to him by the Fourteenth Amendment to the United States Constitution, and is thus entitled to an award of monetary damages from the individual Defendants.

195. DISTRICT 202's written policies and procedures, undertaking to implement and comply with Illinois' Bullying Prevention Act (105 ILCS 5/27-23.7), establish a minimum standard of conduct for DISTRICT 202 employees and agents, Defendants MODERHACK, PEREIRO, and VASQUEZ.

196. DISTRICT 202 purports to follow a policy, outlined in the Handbook, that prohibits hazing or any kind of bullying or aggressive behavior that does physical or psychological harm to a staff person or another student. Prohibited conduct specifically includes, without limitation, any use of violence, intimidation, force, threats, stalking, harassment, sexual harassment, public humiliation, retaliation, hazing, bullying, or other comparable conduct during any school sponsored education program or activity and while at the school or on its property.

197. DISTRICT 202 purports to follow a policy, outlined in its Student Handbook, that requires:

   a. Students who violate the rights of others or district policies will be subject to disciplinary measures;
   b. Bullying during any school–sponsored activity and while on school property be prohibited;
   c. Prompt investigation and addressing of reports of bullying after reports of bullying are received;

    d.  Prohibitions on engaging in hazing or urging others to engage in hazing in any form, including intimidation, coercion, threats, harassment, sexual harassment, public humiliation, retaliation, and bullying;

    e.  Prohibitions on engaging in sexual activity, including indecent exposure and offensive touching, and violating any criminal law, including assault; and

    f.  Prohibitions on taking part in hazing and bullying activities during extracurricular activities and that doing so can result in removal from the activity.

198.    DISTRICT 202 policy was not followed by Defendant SCHOOL DISTRICT 202 employees in that:

    a.  Students involved with the hazing, harassment, bullying, abuse, and other unlawful treatment were not subject to adequate disciplinary measures;

    b.  Investigations into the allegations by DOE CHILD B were not promptly initiated by the agents and/or employees of Defendant DISTRICT 202;

    c.  Students who engaged in the hazing, harassment, bullying, abuse, and other unlawful treatment of DOE CHILD B were allowed to continue participating in practices and be present in the locker room without adequate reprimand;

    d.  Upon information and belief, students who engaged in hazing, harassment, bullying, abuse, and other unlawful treatment of DOE CHILD B were not removed from the football team; and/or

    e.  Otherwise violated school policy.

199.    DISTRICT 202 Policy, and thereby Illinois law contained in the Bullying Prevention Act, was not being followed at Plainfield Central High School during DOE CHILD B's attendance and was not followed in the case of DOE CHILD B's hazing, harassment, bullying, abuse, and other unlawful treatment, and in this action and omission Defendants MODERHACK, PEREIRO, and VASQUEZ were deliberately indifferent to DOE CHILD B and his subsequent deprivation of rights.

200.    Defendants' deliberate indifference to DOE CHILD B's safety, DISTRICT 202 policy, and the law demonstrate an obvious need for training regarding hazing, harassment, bullying, discipline, reporting obligations, monitoring, policy and legal requirements.

201.    Defendants had a duty to observe and monitor DOE CHILD B during football games, football practices, and inside athletic locker rooms and they failed to do so.

202. As a direct and proximate result of the acts and omissions set forth above, DOE CHILD B suffered and continues to suffer a deprivation of his rights secured to him by the Fourteenth Amendment to the United States Constitution, and is thus entitled to an award of monetary damages from the individual Defendants.

203. As a direct and proximate result of the acts and omissions set forth above, DOE CHILD B suffered and continues to suffer severe mental and emotional distress, humiliation, shame, embarrassment, fear, and anxiety and has resulted in permanent damage to his social and emotional well-being, and is thus entitled to an award of monetary damages from the individual Defendants.

WHEREFORE, Plaintiffs JOHN AND JANE DOE B, individually and as parents and next friends of DOE CHILD A, pray for judgment against Defendants MODERHACK, PEREIRO, and VASQUEZ for money damages in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000), interest on any damages awarded, and costs incurred in bringing this action.

### COUNT VII – CIVIL RIGHTS VIOLATION UNDER 42 U.S.C. § 1983; PROCEDURAL DUE PROCESS
**(John and Jane Doe A, individual and as parents and next friends of Doe Child A, a minor v. Moderhack, Pereiro, and Vasquez)**

204. Plaintiffs incorporate by reference all preceding paragraphs.

205. That DOE CHILD A has a clearly established right to equal access to all benefits and privileges of a public education and a right to be free from said illegal practices and policies.

206. That at all relevant times Defendants MODERHACK, PEREIRO, and VASQUEZ were acting under color of state law.

207. The actions and omissions of Defendants MODERHACK, PEREIRO, and VASQUEZ as described above, were arbitrary and capricious, and were not rationally related to any legitimate interest.

208. As a result of Defendants' actions, DOE CHILD A suffered a deprivation of his rights secured to him by the Fourteenth Amendment to the United States Constitution, and is thus entitled to an award of monetary damages from the individual Defendants.

209. DISTRICT 202's written policies and procedures, undertaking to implement and comply with Illinois' Bullying Prevention Act (105 ILCS 5/27-23.7), establish a minimum standard of conduct for DISTRICT 202 employees and agents, Defendants MODERHACK, PEREIRO, and VASQUEZ.

210. DISTRICT 202 purports to follow a policy, outlined in the Handbook, that prohibits hazing or any kind of bullying or aggressive behavior that does physical or psychological harm to a staff person or another student. Prohibited conduct specifically includes, without limitation, any use of violence, intimidation, force, threats, stalking, harassment, sexual harassment, public humiliation, retaliation, hazing, bullying, or other comparable conduct during any school sponsored education program or activity and while at the school or on its property.

211. DISTRICT 202 purports to follow a policy, outlined in its Student Handbook, that requires:

   a. Students who violate the rights of others or district policies will be subject to disciplinary measures;
   b. Bullying during any school–sponsored activity and while on school property be prohibited;
   c. Prompt investigation and addressing of reports of bullying after reports of bullying are received;

    d.  Prohibitions on engaging in hazing or urging others to engage in hazing in any form, including intimidation, coercion, threats, harassment, sexual harassment, public humiliation, retaliation, and bullying;

    e.  Prohibitions on engaging in sexual activity, including indecent exposure and offensive touching, and violating any criminal law, including assault; and

    f.  Prohibitions on taking part in hazing and bullying activities during extracurricular activities and that doing so can result in removal from the activity.

212.    DISTRICT 202 policy was not followed by Defendant SCHOOL DISTRICT 202 employees in that:

    a.  Students involved with the hazing, harassment, bullying, abuse, and other unlawful treatment were not subject to adequate disciplinary measures;

    b.  Investigations into the allegations by DOE CHILD A were not promptly initiated by the agents and/or employees of Defendant DISTRICT 202;

    c.  Students who engaged in the hazing, harassment, bullying, abuse, and other unlawful treatment of DOE CHILD A were allowed to continue participating in practices and be present in the locker room without adequate reprimand;

    d.  Upon information and belief, students who engaged in hazing, harassment, bullying, abuse, and other unlawful treatment of DOE CHILD A were not removed from the football team; and/or

    e.  Otherwise violated school policy.

213.    DISTRICT 202 Policy, and thereby Illinois law contained in the Bullying Prevention Act, was not being followed at Plainfield Central High School during DOE CHILD A's attendance and was not followed in the case of DOE CHILD A's hazing, harassment, bullying, abuse, and other unlawful treatment, and in this action and omission Defendants MODERHACK, PEREIRO, and VASQUEZ were deliberately indifferent to DOE CHILD A and his subsequent deprivation of rights.

214.    Defendants' deliberate indifference to DOE CHILD A's safety, DISTRICT 202 policy, and the law demonstrate an obvious need for training regarding hazing, harassment, bullying, discipline, reporting obligations, monitoring, policy and legal requirements.

215.    Defendants had a duty to observe and monitor DOE CHILD A during football games, football practices, and inside athletic locker rooms and they failed to do so.

216.   As a direct and proximate result of the acts and omissions set forth above, DOE CHILD A suffered and continues to suffer a deprivation of his rights secured to him by the Fourteenth Amendment to the United States Constitution, and is thus entitled to an award of monetary damages from the individual Defendants.

217.   As a direct and proximate result of the acts and omissions set forth above, DOE CHILD A suffered and continues to suffer severe mental and emotional distress, humiliation, shame, embarrassment, fear, and anxiety and has resulted in permanent damage to his social and emotional well-being, and is thus entitled to an award of monetary damages from the individual Defendants.

WHEREFORE, Plaintiffs JOHN AND JANE DOE A, individually and as parents and next friends of DOE CHILD A, pray for judgment against Defendants MODERHACK, PEREIRO, and VASQUEZ for money damages in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000), interest on any damages awarded, and costs incurred in bringing this action.

### COUNT VIII – CIVIL RIGHTS VIOLATION UNDER 42 U.S.C. § 1983; PROCEDURAL DUE PROCESS
**(John and Jane Doe B, individually and as parents and next friends of Doe Child B, a minor v. Moderhack, Pereiro, and Vasquez)**

218.   Plaintiffs incorporate by reference all preceding paragraphs.

219.   That DOE CHILD B has a clearly established right to equal access to all benefits and privileges of a public education and a right to be free from said illegal practices and policies.

220.   That at all relevant times Defendants MODERHACK, PEREIRO, and VASQUEZ were acting under color of state law.

221. The actions and omissions of Defendants MODERHACK, PEREIRO, and VASQUEZ as described above, were arbitrary and capricious, and were not rationally related to any legitimate interest.

222. As a result of Defendants' actions, DOE CHILD B suffered a deprivation of his rights secured to him by the Fourteenth Amendment to the United States Constitution, and is thus entitled to an award of monetary damages from the individual Defendants.

223. DISTRICT 202's written policies and procedures, undertaking to implement and comply with Illinois' Bullying Prevention Act (105 ILCS 5/27-23.7), establish a minimum standard of conduct for DISTRICT 202 employees and agents, Defendants MODERHACK, PEREIRO, and VASQUEZ.

224. DISTRICT 202 purports to follow a policy, outlined in the Handbook, that prohibits hazing or any kind of bullying or aggressive behavior that does physical or psychological harm to a staff person or another student. Prohibited conduct specifically includes, without limitation, any use of violence, intimidation, force, threats, stalking, harassment, sexual harassment, public humiliation, retaliation, hazing, bullying, or other comparable conduct during any school sponsored education program or activity and while at the school or on its property.

225. DISTRICT 202 purports to follow a policy, outlined in its Student Handbook, that requires:

a. Students who violate the rights of others or district policies will be subject to disciplinary measures;
b. Bullying during any school–sponsored activity and while on school property be prohibited;
c. Prompt investigation and addressing of reports of bullying after reports of bullying are received;

    d.  Prohibitions on engaging in hazing or urging others to engage in hazing in any form, including intimidation, coercion, threats, harassment, sexual harassment, public humiliation, retaliation, and bullying;

    e.  Prohibitions on engaging in sexual activity, including indecent exposure and offensive touching, and violating any criminal law, including assault; and

    f.  Prohibitions on taking part in hazing and bullying activities during extracurricular activities and that doing so can result in removal from the activity.

226.    DISTRICT 202 policy was not followed by Defendant SCHOOL DISTRICT 202 employees in that:

    a.  Students involved with the hazing, harassment, bullying, abuse, and other unlawful treatment were not subject to adequate disciplinary measures;

    b.  Investigations into the allegations by DOE CHILD B were not promptly initiated by the agents and/or employees of Defendant DISTRICT 202;

    c.  Students who engaged in the hazing, harassment, bullying, abuse, and other unlawful treatment of DOE CHILD B were allowed to continue participating in practices and be present in the locker room without adequate reprimand;

    d.  Upon information and belief, students who engaged in hazing, harassment, bullying, abuse, and other unlawful treatment of DOE CHILD B were not removed from the football team; and/or

    e.  Otherwise violated school policy.

227.    DISTRICT 202 Policy, and thereby Illinois law contained in the Bullying Prevention Act, was not being followed at Plainfield Central High School during DOE CHILD B's attendance and was not followed in the case of DOE CHILD B's hazing, harassment, bullying, abuse, and other unlawful treatment, and in this action and omission Defendants MODERHACK, PEREIRO, and VASQUEZ were deliberately indifferent to DOE CHILD B and his subsequent deprivation of rights.

228.    Defendants' deliberate indifference to DOE CHILD B's safety, DISTRICT 202 policy, and the law demonstrate an obvious need for training regarding hazing, harassment, bullying, discipline, reporting obligations, monitoring, policy and legal requirements.

229.    Defendants had a duty to observe and monitor DOE CHILD B during football games, football practices, and inside athletic locker rooms and they failed to do so.

230. As a direct and proximate result of the acts and omissions set forth above, DOE CHILD B suffered and continues to suffer a deprivation of his rights secured to him by the Fourteenth Amendment to the United States Constitution, and is thus entitled to an award of monetary damages from the individual Defendants.

231. As a direct and proximate result of the acts and omissions set forth above, DOE CHILD B suffered and continues to suffer severe mental and emotional distress, humiliation, shame, embarrassment, fear, and anxiety and has resulted in permanent damage to his social and emotional well-being, and is thus entitled to an award of monetary damages from the individual Defendants.

WHEREFORE, Plaintiffs JOHN AND JANE DOE B, individually and as parents and next friends of DOE CHILD A, pray for judgment against Defendants MODERHACK, PEREIRO, and VASQUEZ for money damages in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000), interest on any damages awarded, and costs incurred in bringing this action.

## COUNT IX—CIVIL RIGHTS VIOLATION UNDER 42 U.S.C § 1983 (*MONELL* CLAIM)
### (John and Jane Doe A, individually and as parents and next friends of Doe Child A, a minor vs. District 202)

232. Plaintiff incorporates by reference all preceding paragraphs.

233. The actions of Defendants resulted from, and were taken, pursuant to a *de facto* policy and widespread custom of not, monitoring or protecting students during football practices, football games, and their time in the athletic locker rooms at Plainfield Central High School and subsequently not reporting, sufficiently investigating or disciplining harassment, hazing, and bullying that occurs.

234. This *de facto policy* and widespread custom of Defendant SCHOOL DISTRICT 202 is implemented by Defendant MODERHACK, PEREIRO, and VASQUEZ, all acting

under the color of law, who chose to violate Plaintiff's constitutional rights, without rightful authority of law.

235.    The existence of the *de facto* policy and widespread custom described above has been known or should have been known to supervisory and policy making officers and officials of Defendant DISTRICT 202 for a substantial period of time.

236.    Despite their knowledge of the said illegal policy and practices, supervisory and policy-making officers and officials of the Defendant DISTRICT 202 has not taken steps to determine said practices, have not disciplined or otherwise properly supervised the individual employees who engaged in said practices, have not effectively trained the football coaches, including Defendants MODERHACK, PEREIRO, and VASQUEZ with regard to the proper constitutional and statutory limits on the exercise of their authority, and have instead sanctioned the policy and the practices described herein.

237.    That DOE CHILD A has a clearly established right to equal access to all benefits and privileges of a public education and a right to be free from offensive harassment in school.

238.    DISTRICT 202's written policies and procedures, undertaking to implement and comply with Illinois' Bullying Prevention Act (105 ILCS 5/27-23.7), establish a minimum standard of conduct for DISTRICT 202 employees, including Defendants MODERHACK, PEREIRO, and VASQUEZ.

239.    DISTRICT 202 purports to follow a policy, outlined in the Handbook, that prohibits hazing or any kind of bullying or aggressive behavior that does physical or psychological harm to a staff person or another student. Prohibited conduct specifically

includes, without limitation, any use of violence, intimidation, force, threats, stalking, harassment, sexual harassment, public humiliation, retaliation, hazing, bullying, or other comparable conduct during any school sponsored education program or activity and while at the school or on its property.

240. DISTRICT 202 purports to follow a policy, outlined in its Student Handbook, that requires:

    a. Students who violate the rights of others or district policies will be subject to disciplinary measures;

    b. Bullying during any school–sponsored activity and while on school property be prohibited;

    c. Prompt investigation and addressing of reports of bullying after reports of bullying are received;

    d. Prohibitions on engaging in hazing or urging others to engage in hazing in any form, including intimidation, coercion, threats, harassment, sexual harassment, public humiliation, retaliation, and bullying;

    e. Prohibitions on engaging in sexual activity, including indecent exposure and offensive touching, and violating any criminal law, including assault; and,

    f. Prohibitions on taking part in hazing and bullying activities during extracurricular activities and that doing so can result in removal from the activity.

241. DISTRICT 202 policy was not followed by Defendant DISTRICT 202 employees in that:

    a. Upon information and belief, the students who were involved with the hazing, harassment, bullying, abuse, and other unlawful treatment were not subject to adequate disciplinary measures;

    b. Upon information and belief, investigations into the allegations by DOE CHILD A were not promptly initiated by the agents and/or employees of Defendant DISTRICT 202;

    c. Upon and information and belief; students who engaged in the hazing, harassment, bullying, abuse, and other unlawful treatment of DOE CHILD A were allowed to continue participating in practices and be present in the locker room without adequate reprimand;

    d. Upon information and belief, students who engaged in hazing, harassment, bullying, abuse, and other unlawful treatment of DOE CHILD A were not removed from the football team;

    e. Otherwise violated school policy.

242.   DISTRICT 202 policy was not being followed at Plainfield Central High School during DOE CHILD A's attendance and was not followed in the case of DOE CHILD A's hazing, harassment, bullying, abuse, and other unlawful treatment, and in this action and omission Defendant DISTRICT 202 was deliberately indifferent to DOE CHILD A and his subsequent deprivation of rights.

243.   Defendants' deliberate indifference to DOE CHILD A's safety and well-being and DISTRICT 202 policy demonstrate an obvious need for training regarding hazing, harassment, bullying, discipline, reporting obligations, and monitoring during athletic games, practices, and time in the athletic locker rooms.

244.   That the above actions and omissions by Defendants were deliberate and intentional and have resulted in violations of DOE CHILD A's rights to due process and equal protection, all in violation of the Fourteenth Amendment to the United States Constitution.

245.   That by reason of the aforesaid actions, DISTRICT 202's actions exhibit deliberate indifference to and/or reckless disregard for the constitutional rights of DOE CHILD A and other similarly situated students, all in violation of his constitutional rights, and as a direct and proximate result thereof, he sustained damages in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000), interest on any damages awarded, and costs incurred in bringing this action.

WHEREFORE, Plaintiffs JOHN and JANE DOE A, individually and as parents and next friends of DOE CHILD A, pray for judgment against SCHOOL DISTRICT 202 for money damages in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000), interest on any damages awarded, and costs incurred in bringing this action.

**COUNT X—CIVIL RIGHTS VIOLATION UNDER 42 U.S.C § 1983 (*MONELL* CLAIM)**
**(John and Jane Doe B, individually and as parents and next friends of Doe Child B, a minor vs. District 202)**

246.     Plaintiff incorporates by reference all preceding paragraphs.

247.     The actions of Defendants resulted from, and were taken, pursuant to a *de facto* policy and widespread custom of not, monitoring or protecting students during football practices, football games, and their time in the athletic locker rooms at Plainfield Central High School and subsequently not reporting, sufficiently investigating or disciplining harassment, hazing, and bullying that occurs.

248.     This *de facto policy* and widespread custom of Defendant SCHOOL DISTRICT 202 is implemented by Defendant MODERHACK, PEREIRO, and VASQUEZ, all acting under the color of law, who chose to violate Plaintiff's constitutional rights, without rightful authority of law.

249.     The existence of the *de facto* policy and widespread custom described above has been known or should have been known to supervisory and policy making officers and officials of Defendant DISTRICT 202 for a substantial period of time.

250.      Despite their knowledge of the said illegal policy and practices, supervisory and policy-making officers and officials of the Defendant DISTRICT 202 has not taken steps to determine said practices, have not disciplined or otherwise properly supervised the individual employees who engaged in said practices, have not effectively trained the football coaches, including Defendants MODERHACK, PEREIRO, and VASQUEZ with regard to the proper constitutional and statutory limits on the exercise of their authority, and have instead sanctioned the policy and the practices described herein.

45

251. That DOE CHILD B has a clearly established right to equal access to all benefits and privileges of a public education and a right to be free from offensive harassment in school.

252. DISTRICT 202's written policies and procedures, undertaking to implement and comply with Illinois' Bullying Prevention Act (105 ILCS 5/27-23.7), establish a minimum standard of conduct for DISTRICT 202 employees, including Defendants MODERHACK, PEREIRO, and VASQUEZ.

253. DISTRICT 202 purports to follow a policy, outlined in the Handbook, that prohibits hazing or any kind of bullying or aggressive behavior that does physical or psychological harm to a staff person or another student. Prohibited conduct specifically includes, without limitation, any use of violence, intimidation, force, threats, stalking, harassment, sexual harassment, public humiliation, retaliation, hazing, bullying, or other comparable conduct during any school sponsored education program or activity and while at the school or on its property.

254. DISTRICT 202 purports to follow a policy, outlined in its Student Handbook, that requires:

   a. Students who violate the rights of others or district policies will be subject to disciplinary measures;
   b. Bullying during any school–sponsored activity and while on school property be prohibited;
   c. Prompt investigation and addressing of reports of bullying after reports of bullying are received;
   d. Prohibitions on engaging in hazing or urging others to engage in hazing in any form, including intimidation, coercion, threats, harassment, sexual harassment, public humiliation, retaliation, and bullying;
   e. Prohibitions on engaging in sexual activity, including indecent exposure and offensive touching, and violating any criminal law, including assault; and,
   f. Prohibitions on taking part in hazing and bullying activities during extracurricular activities and that doing so can result in removal from the activity.

255.    DISTRICT 202 policy was not followed by Defendant DISTRICT 202 employees in

that:

a.  Upon information and belief, the students who were involved with the hazing,
    harassment, bullying, abuse, and other unlawful treatment were not subject to
    adequate disciplinary measures;
b.  Upon information and belief, investigations into the allegations by DOE CHILD B
    were not promptly initiated by the agents and/or employees of Defendant
    DISTRICT 202;
c.  Upon and information and belief; students who engaged in the hazing, harassment,
    bullying, abuse, and other unlawful treatment of DOE CHILD B were allowed to
    continue participating in practices and be present in the locker room without
    adequate reprimand;
d.  Upon information and belief, students who engaged in hazing, harassment,
    bullying, abuse, and other unlawful treatment of DOE CHILD B were not removed
    from the football team;
e.  Otherwise violated school policy.

256.    DISTRICT 202 policy was not being followed at Plainfield Central High School during

DOE CHILD B's attendance and was not followed in the case of DOE CHILD B's

hazing, harassment, bullying, abuse, and other unlawful treatment, and in this action

and omission Defendant DISTRICT 202 was deliberately indifferent to DOE CHILD

B and his subsequent deprivation of rights.

257.    Defendants' deliberate indifference to DOE CHILD B's safety and well-being and

DISTRICT 202 policy demonstrate an obvious need for training regarding hazing,

harassment, bullying, discipline, reporting obligations, and monitoring during athletic

games, practices, and time in the athletic locker rooms.

258.    That the above actions and omissions by Defendants were deliberate and intentional

and have resulted in violations of DOE CHILD B's rights to due process and equal

protection, all in violation of the Fourteenth Amendment to the United States

Constitution.

259.    That by reason of the aforesaid actions, DISTRICT 202's actions exhibit deliberate indifference to and/or reckless disregard for the constitutional rights of DOE CHILD B and other similarly situated students, all in violation of his constitutional rights, and as a direct and proximate result thereof, he sustained damages in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000), interest on any damages awarded, and costs incurred in bringing this action.

WHEREFORE, Plaintiffs JOHN and JANE DOE B, individually and as parents and next friends of DOE CHILD B, pray for judgment against Defendant DISTRICT 202 for money damages in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000), interest on any damages awarded, and costs incurred in bringing this action.

## PRAYER FOR INJUNCTIVE DECLARATORY RELIEF

WHEREFORE, Plaintiffs, JOHN & JANE DOE A, individually and as Parents and Next Friends of DOE CHILD A, a minor, request judgment in their favor and pray for relief against Defendants DISTRICT 202; MODERHACK, PEREIRO, and VASQUEZ as follows:

260.    For an order declaring that Defendants DISTRICT 202, MODERHACK, PEREIRO, and VASQUEZ have acted with willful and wanton disregard to known acts of hazing;

261.    For an order declaring that Defendants DISTRICT 202, MODERHACK, PEREIRO, and VASQUEZ have acted with willful and wanton disregard by failing to properly train DISTRICT 202 teachers, coaches, and staff how to properly monitor and discipline students who engage in hazing;

262.    For a permanent injunction restraining and enjoining Defendants DISTRICT 202, MODERHACK, PEREIRO, and VASQUEZ from failing to adequately protect

Plaintiffs and other similarly situated students, from verbal and physical harassment within DISTRICT 202, including but not limited to assault, battery, and sexual assault;

263. For a permanent injunction ordering Defendants DISTRICT 202, MODERHACK, PEREIRO, and VASQUEZ, to stop engaging in unlawful acts, and to develop policies and procedures for ending any such unlawful acts and the hostile and unsafe environment, including but not limited to the following:

   a. Require Defendant DISTRICT 202 to implement mandatory and effective training programs for District faculty, staff, coaches, and students on issues relating to hazing and bullying, and methods to intervene to stop students from hazing/bullying other students.
   b. Require Defendant DISTRICT 202 to adopt policies with specific guidelines for instructing teachers, coaches, staff, and other School District employees about how to address observed and unobserved acts of hazing, bullying, and violence;
   c. Require Defendant DISTRICT 202 to conduct assemblies for all students in the School District addressing issues of hazing, bullying, and violence, wherein students are instructed about laws prohibiting violence, including but not limited to assault, battery, sexual assault, hazing, and bullying, as well as the detrimental social and psychological effects such behavior has on students' lives;
   d. Require Defendant DISTRICT 202 to conduct educational sessions wherein student athletes and their parents are instructed about laws prohibiting hazing and bullying and how they impact the athletes' required conduct during school sponsored activities;
   e. Require Defendant DISTRICT 202 to assign a peer mediator and/or other staff member to District schools to provide active monitoring for the schools and to address instances of hazing and bullying that arise at the schools;
   f. Require Defendant DISTRICT 202 to maintain statistical data concerning each complaint of hazing and bullying made by a student, parent, or staff member, as well as the specific action School District personnel took to resolve the complaint; and/or
   g. For an order awarding such other and further relief this Court deems just and proper.

Respectfully Submitted,
ROMANUCCI & BLANDIN, LLC

By:/s          Antonio M. Romanucci
          Attorney for Plaintiffs

Antonio M. Romanucci
Bhavani K. Raveendran
Ian P. Fallon
**ROMANUCCI & BLANDIN, LLC**
321 North Clark Street, Suite 900
Chicago, IL 60654
Tel: (312) 458-1000
Fax: (312) 458-1004
aromanucci@rblaw.net
b.raveendran@rblaw.net
ifallon@rblaw.net