## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| JOHN and JANE DOE A, individually and as parents and next friends of DOE CHILD A, a minor; and JOHN and JANE DOE B, individually and as parents and next friends of DOE CHILD B, a minor, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | 21 C 4460 |
| PLAINFIELD COMMUNITY CONSOLIDATED SCHOOL DISTRICT 202; MICHAEL MODERHACK, individually and as an agent of District 202; JON PEREIRO, individually and as an agent of District 202; and VINCENT VASQUEZ, individually and as an agent of District 202, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## <u>MEMORANDUM OPINION</u>

**CHARLES P. KOCORAS, District Judge:**

This matter is before the Court on Defendants Plainfield Community Consolidated School District 202 ("District"), Michael Moderhack, Jon Pereiro, and Vincent Vasquez's Motion to Dismiss Plaintiffs' Second Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the Court grants Defendants' Motion in part.

## BACKGROUND

This is Plaintiffs' third attempt to keep their case alive in federal court. This Court previously rejected procedural and substantive due process and Title IX claims and declined to exercise jurisdiction over Plaintiffs' state law claims. Plaintiffs are back with their Second Amended Complaint which raises equal protection claims, *Monell* claims, new Title IX claims, and state law claims.

The following facts come from the Second Amended Complaint and are assumed true for the purpose of this Motion. *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013). All reasonable inferences are drawn in Plaintiffs' favor. *League of Women Voters of Chi. v. City of Chi.*, 757 F.3d 722, 724 (7th Cir. 2014).

On October 17, 2019, Doe Child A and Doe Child B (collectively, the "Doe Children") were sexually assaulted by members of their football team at Plainfield Central High School ("Plainfield Central") in Plainfield, Illinois. They were subjected to a known hazing ritual referred to among the Plainfield Central football community as "Code Blue," which has allegedly been a part of the football team culture for years and sanctioned by the team coaches. Defendants Moderhack, Pereiro, and Vasquez (collectively, the "Defendant Coaches") were coaches of the football team at the time of the assaults and, despite knowing about "Code Blue" and prior incidents where players were sexually assaulted, failed to monitor the locker rooms or put a stop to the attacks.

On the day before the Doe Children were attacked, two unknown freshman members of the football team were sexually assaulted with a broomstick by unknown assailants in the unsupervised locker room. The next day, October 17, 2019, a third unknown freshman was subjected to a similar attack prior to the end of the varsity team's practice, which concluded around 4:45 p.m. After their team's practice, the Doe Children were in the locker room when they were surrounded by varsity players and sexually assaulted with broomsticks.

At some point prior to 5:15 p.m. that evening, a student told Vasquez that freshman team members were being attacked in the locker room. Vasquez informed Moderhack and Pereiro, and Vasquez and Pereiro went to the locker room but found it empty. Moderhack questioned Doe Child B about the assault and made him repeat his description of the occurrence to Pereiro. Moderhack then sought out Doe Child A to confirm what Doe Child B reported. Even after being informed of the assaults, Moderhack did not separate the Doe Children from the varsity assailants. Moderhack and the Doe Children were on the sidelines when several of the assailants approached Doe Child A and accused him of snitching. Another assailant said, "it was just a joke."

Pereiro called Plainfield Central's Athletic Director, Mark Krusz, and Assistant Principal, Matt Ambrose, and reported the assaults. Either Pereiro or Krusz called the Doe Parents and informed them there had been "an incident" in the football locker room and that there would be a meeting the next morning but did not mention anything about sexual assault.

3

On October 18, 2019, the school administration asked the parents of the students that were present during the attacks on the Doe Children to attend a meeting to address the assaults from the previous day. The Defendant Coaches, Athletic Director Krusz, Vice Principal Ambrose, and Plainfield police officer and school resource officer ("SRO") Matt Lehman were present during the meeting.

Plaintiffs allege Krusz initially refused to address the assaults and told parents he had no idea what happened the night before, even though he was contacted by one of the Defendant Coaches. Krusz admitted that a coach, teacher, or faculty member is required to be in the locker rooms whenever students are present. Defendant Moderhack stated that while coaches used to be present in the locker rooms, students complained they were uncomfortable with such monitoring.

Parents and students were then separated, and SRO Lehman began a police investigation into the matter. At the conclusion of the meeting, school administrators told parents of the Doe Children that they should follow up with SRO Lehman regarding the status of the investigation, not the school. Despite the Doe Parents' multiple attempts to follow up with SRO Lehman, SRO Lehman eventually stopped returning their calls.

The Doe Children continued to experience harassment after the assaults, both at the school and through social media. A Snapchat video of the assault circulated throughout the Plainfield Central student body. Doe Child A was called a "sissy", had students tell him that "nobody raped" him, and was ridiculed because he "went and

4

cried rape." Doe Child B was subjected to similar harassment, including his peers chanting "broomstick" at him while competing in basketball games at which District administrators and the Defendant Coaches were present. Members of the football team threatened Doe Child B by saying "we're going to crush your head in."

Plaintiffs allege upon information and belief that four of the students who participated in the "Code Blue" were each punished with a mere three-day suspension. Other participants received little or no punishment at all, and the majority of the 10-20 varsity assailants were allowed to remain on the football team and continue to play.

Three weeks after the assaults, Doe Child B asked to transfer schools. Plaintiffs allege the District refused to sign a release that would allow Doe Child B to compete for another athletic team and refused to include information regarding the assault and subsequent harassment and bullying in the release. Doe Child B eventually transferred to a private school but lost a year of athletic eligibility. The District also refused to grant a transfer request from Doe Child A, although Doe Child A has since stopped attending Plainfield Central and now attends a different public high school in the area.

Based on these events, Plaintiffs bring state law claims for willful and wanton conduct; claims for violations their Fourteenth Amendment equal protection rights under 42 U.S.C. § 1983; *Monell* claims under 42 U.S.C. § 1983; and claims for violations of Title IX, 20 U.S.C. § 1681 *et seq.*

In their Section 1983 claims, Plaintiffs allege Defendants each subjected the Doe Children to violations of their right to equal protection of laws by: (1) failing to

investigate the varsity assailants' misconduct; (2) failing to properly discipline the majority of the varsity players involved in the assaults; (3) failing to adequately train and supervise the Defendant Coaches; and (4) manifesting deliberate indifference to the sexual assault and ongoing harassment of the Doe Children. Plaintiffs further allege the District has and/or had unconstitutional customs or policies of failing to investigate evidence of criminal and tortious misconduct against District students, instead passing off such investigation to the Plainfield Police Department, and failing to adequately train and supervise District employees.

Plaintiffs also raise multiple Title IX claims, including pre-assault "heightened risk" claims, post-assault deliberate indifference and retaliation claims, and a direct sex-based discrimination claim. Defendants move under Rule 12(b)(6) to dismiss each of Plaintiffs' claims.

## **LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). The Court accepts as true well pleaded facts in the complaint and draws all reasonable inferences in favor of the plaintiff. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). The allegations in the complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

A plaintiff need not provide detailed factual allegations, but it must provide enough factual support to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The claim must be described "in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a Rule 12(b)(6) motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible if the complaint contains sufficient alleged facts that allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

<u>**DISCUSSION**</u>

Defendants move to dismiss Plaintiffs' Second Amended Complaint in its entirety. The Court addresses each claim in turn.

## I. Section 1983 Claims

Section 1983 "provides a remedy for violations of federal rights committed by persons acting under the color of state law." *First Midwest Bank Guardian of Estate of LaPorta v. City of Chi.*, 988 F.3d 978, 986 (7th Cir. 2021). Plaintiffs allege violations of the Doe Children's rights under the Equal Protection Clause of the Fourteenth Amendment.

"The Equal Protection Clause of the Fourteenth Amendment prohibits state and local governments from discriminating on the basis of certain protected classifications and also bars governments from treating a person irrationally as a so-called 'class of one.'"[1]  *Doe v. Bd. of Educ. of City of Chi.*, 2020 WL 1445638, at *6 (N.D. Ill. 2020) (citing *Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010)).  To state a claim of equal protection violation based on gender under Section 1983, a plaintiff must allege that the defendants "discriminated against [him] based on [his] membership in a definable class" and that the defendants "acted with a nefarious discriminatory purpose."  *Doe v. Evergreen Park Elem. Sch. Dist. 124*, 2017 WL 6731867, at *8 (N.D. Ill. 2017) (quoting *D.S. v. East Porter Cnty. Sch. Corp.*, 799 F.3d 793, 799 (7th Cir. 2015)).

### a.  Equal Protection Claims against the Defendant Coaches: Counts V and VI

In Counts V and VI, Plaintiffs allege the Defendant Coaches violated the Doe Children's rights to equal protection of laws by: failing to investigate the varsity assailants' misconduct; failing to properly discipline the majority of the varsity

---

[1] In three sentences, Plaintiffs half-heartedly attempt to argue they successfully pleaded a class-of-one equal protection claim in the alternative.  However, the Court finds this argument waived.  *See Shipley v. Chi. Bd. of Election Comm'rs*, 947 F.3d 1056, 1063 (7th Cir. 2020) ("Arguments that are underdeveloped, cursory, and lack supporting authority are waived."); *Uncommon, LLC v. Spigen, Inc.*, 926 F.3d 409, 419 n.2 (7th Cir. 2019) ("As briefed, the argument is terse, free of legal citation, and vague.  It is therefore waived."); *Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) ("Moreover, perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues)." (quotations omitted)).

assailants involved in the assaults; and manifesting deliberate indifference to the sexual assault and ongoing harassment of the Doe Children by other students.

Plaintiffs' equal protection claims against the Defendant Coaches fail. Plaintiffs claim that, based on Defendants' purported refusal to acknowledge the assault of the Doe Children in the locker room as a sexual assault[2], the Doe Children were treated differently from, and taken less seriously than, other sexual assault victims at Plainfield Central because their assault was male-on-male rather than male-on-female. Plaintiffs do not allege any facts that support the claim that the Doe Children were treated differently than other sexual assault victims at Plainfield Central. Also missing from Plaintiffs' equal protection claims are any allegations from which the Court could draw a reasonable inference of discriminatory intent. Counts V and VI against the Defendant Coaches are dismissed.

### b. *Monell* Claims against the District: Counts V through VIII

To state a claim under Section 1983 for local governmental liability under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), a plaintiff must allege that his harm resulted from a constitutional violation and that the local governmental body is responsible for the violation. *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992). The District, as a local governmental body, "may be held liable for its own

---

[2] Plaintiffs primarily rely on the allegation that the police investigated the assaults as criminal battery rather than sexual assault to support their claim that Defendants refused to consider what happened to the Doe Children as sexual assault and therefore discriminated against the Doe Children; however, Defendants have no control over police investigations or criminal charges.

violations of the federal Constitution and laws." *First Midwest Bank*, 988 F.3d at 986 (quoting *Monell*, 436 U.S. at 690–91); *see also Hildreth v. Butler*, 960 F.3d 420, 436 (7th Cir. 2020) (recognizing that respondeat superior liability does not apply to Section 1983 claims). Local governmental liability under Section 1983 is limited to violations caused by (1) an express policy, (2) a widespread practice so well-settled it becomes a custom, or (3) a person with final policymaking authority for the local governmental body. *Spiegel v. McClintic*, 916 F.3d 611, 617 (7th Cir. 2019). *Monell* imposes a high bar for liability; the local governmental body's action must have been taken with "deliberate indifference" to one's constitutional rights and must have been the "moving force" behind the constitutional violation. *First Midwest Bank*, 988 F.3d at 987. Deliberate indifference goes beyond a failure to act; the conduct must rise to the level of criminal recklessness. *Flores v. City of S. Bend*, 997 F.3d 725, 729 (7th Cir. 2021).

In Counts V and VI, Plaintiffs allege the District has and/or had unconstitutional customs or policies of failing to investigate "evidence of criminal and tortious misconduct against [District] students in the nature of violations of their right to personal security and bodily integrity, instead passing such investigation over to the Plainfield Police Department", and failing to adequately train and supervise District employees "with regard to maintaining, preserving, and protecting students from violations of their right to personal security, bodily integrity, and Equal Protection of Laws." Dkt. # 38, ¶¶ 222, 231. Plaintiffs allege, on information and belief, that the District followed these unconstitutional customs and policies not only with regard to

10

the Doe Children but with regard to other District students. Plaintiffs assert the District's policies and/or practices constituted disparate treatment of male victims of sexual assault and had a disparate impact on male students who were sexually assaulted on school grounds. And in Counts VII and VIII, Plaintiffs allege the District violated the Doe Children's Fourteenth Amendment equal protection rights by failing to properly train and supervise its employees as to mandated investigative requirements.

A municipal entity like the District, however, cannot be found liable under *Monell* where there is no underlying constitutional violation by a municipal employee. *D.S.*, 799 F.3d at 800. Because Plaintiffs have not sufficiently alleged a violation of their constitutional rights as set forth above, the District cannot be held liable under *Monell*. *See id.*; *see also Moore*, 570 F. Supp. 3d at 612 ("And because the only constitutional violation alleged is one of Fourteenth Amendment Equal Protection, which the Court dismissed above, there is no constitutional violation alleged and thus there can be no local governmental body liability."). Counts V through VIII against the District are dismissed.

Even if Plaintiffs had adequately pleaded a constitutional violation, their *Monell* claims would still fail. The knowledge element simply is not there. It is true that in limited circumstances, a local government entity's failure to train can form the basis for liability under Section 1983. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). However, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train. To satisfy the statute, a municipality's failure

to train its employees in a relevant respect must amount to deliberate indifference to the rights of persons with whom the untrained employees come into contact." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (cleaned up). "Proof of deliberate indifference requires more than '[a] showing of simple or even heightened negligence.'" *Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007) (quoting *Bd. of Cty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 407 (1997) (alteration in original)). Deliberate indifference may be proved in two ways. *Id.* First, a plaintiff can prove that "'in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights,' that the deficiency exhibits deliberate indifference on the part of municipal policymakers." *Id.* (quoting *City of Canton*, 489 U.S. at 390). Second, deliberate indifference may be shown "when a repeated pattern of constitutional violations makes 'the need for further training . . . plainly obvious to . . . policymakers.'" *Id.* (quoting *City of Canton*, 489 U.S. at 390 n.10 (first alteration in original)).

While Plaintiffs generally allege that "Code Blue" was a well-known tradition that the District and the Defendant Coaches knowingly allowed to continue unchecked, there are simply no allegations that back these conclusory claims up. Conclusions aside, there are no facts that plausibly suggest the District was on notice that its students' constitutional rights were being violated. Had there been previous reports of sexual harassment or assault in the past which the District did not adequately respond to? Did District employees witness incidents of sexual harassment? At bottom, Plaintiffs do

12

not plausibly allege that the need for additional training was so obvious and the status quo so likely to result in constitutional violations that the District can reasonably be said to have been deliberately indifferent to the need.

## II.   Title IX Claims

"Title IX provides that: 'No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.'" *Jauquet v. Green Bay Area Catholic Educ., Inc.*, 996 F.3d 802, 807 (7th Cir. 2021) (quoting 20 U.S.C. § 1681(a)). A gender discrimination claim under Title IX may be either "direct" or "indirect." *Id.* A direct claim alleges that the school itself discriminated against the plaintiff on the basis of sex, while an indirect claim may be based on "student-on-student harassment that is so severe that the harassment functionally excludes a student from school activities on the basis of sex." *Id.*; *see also Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 648 (1999) (recognizing that school administrators "may be liable for their deliberate indifference to known acts of peer sexual harassment").

The Supreme Court, however, has set a "high bar for plaintiffs seeking to hold schools and school officials liable" for student-on-student harassment. *Doe v. Galster*, 768 F.3d 611, 616 (7th Cir. 2014). "To prove a Title IX sexual-harassment claim between students, a plaintiff must demonstrate that the school was 'deliberately indifferent to sexual harassment, of which they have actual knowledge, that is so severe,

13

pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school.'" *Johnson v. Ne. Sch. Corp.*, 972 F.3d 905, 911 (7th Cir. 2020) (quoting *Davis*, 526 U.S. at 650). Because there is no vicarious liability under Title IX, Plaintiffs must adequately allege that a school official with authority to take corrective measures on the District's behalf had actual notice of and was deliberately indifferent to sexual harassment. *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998); *Doe v. Bd. of Educ. of City of Chi.*, 2020 WL 1445638, at *3.

Plaintiffs bring both direct and indirect discrimination claims in the Second Amended Complaint. In Count IX, Plaintiffs bring a pre-assault "heightened risk" claim. In Counts X and XI, Plaintiffs bring post-assault deliberate indifference claims. In Counts XII and XIII, Plaintiffs bring post-assault retaliation claims. And in Count XIV, Plaintiffs bring a direct sex-based discrimination claim.

### a. Creation of a Heightened Risk of Sexual Harassment: Count IX

In this count, Plaintiffs allege the District maintained an official policy of deliberate indifference to the "Code Blue" hazing ritual. Plaintiffs claim the District had actual knowledge of the "tradition" of "Code Blue" since at least 2014, yet did nothing to address or stop the practice by, for example, investigating the practice, admonishing students, disciplining offenders, or supervising students in the locker room. As a result, Plaintiffs allege, the District's policy of deliberate indifference caused the Doe Children to be sexually harassed.

14

The Seventh Circuit has yet to adjudicate a pre-assault, "official policy" claim under Title IX. "The claim derives from Supreme Court dicta, sister Circuit holdings, lower court holdings, and U.S. Department of Education guidance." *See Vander Pas v. Bd. of Regents of Univ. of Wis. Sys.*, 2022 WL 1597423, at \*5 (E.D. Wis. 2022). Assuming without deciding that the Seventh Circuit would recognize such a claim as a distinct, cognizable theory of liability under Title IX[3], Count IX nevertheless must be dismissed.

In the Ninth Circuit, pre-assault or official policy claims will survive a motion to dismiss if the plaintiff plausibly alleges that (1) a school maintained a policy of deliberate indifference to reports of sexual misconduct, (2) which created a heightened risk of sexual harassment that was known or obvious (3) in a context subject to the school's control, and (4) as a result, the plaintiff suffered harassment that was "so severe, pervasive, and objectively offensive that it can be said to [have] deprive[d] the [plaintiff] of access to the educational opportunities or benefits provided by the school." *Karasek v. Regents of Univ. of Calif.*, 956 F.3d 1093, 1112 (9th Cir. 2020) (quoting *Davis*, 526 U.S. at 650). The Sixth Circuit has adopted this test for a student alleging that a school's deliberate indifference before the student was harassed caused the harassment. *See Doe v. Metro. Gov't & Davidson Cnty.*, 35 F.4th 459, 465 (6th Cir. 2022).

---

[3] *See id.*; *see also Reed v. S. Ill. Univ.*, 2020 WL 3077186, at \*7 (S.D. Ill. 2020) ("While the issue has not been addressed in the Seventh Circuit, that alone is insufficient to lead this Court to rule definitively that such a claim does not exist or has been rejected or not recognized in this Circuit.").

*Karasek* requires the heightened risk to be known or obvious, but not that a school have actual knowledge.  Other courts, however, do require actual knowledge of a more particularized risk.  *See Reed*, 2020 WL 3077186, at *6–7 (and discussion therein).  In the Court's view, allegations of actual knowledge of the heightened risk of sexual assault are required here.  "[W]ithout actual knowledge, the policy itself would not be *deliberately* indifferent."  *Tubbs v. Stony Brook. Univ.*, 2016 WL 8650463, at *8 n.7 (S.D.N.Y. 2016); *see also Doe v. Blackburn Coll.*, 2012 WL 640046, at *11 (C.D. Ill. 2012) ("A policy of indifference necessarily implies actual notice of a substantial risk."); *Reed*, 2020 WL 3077186, at *6 ("*Karasek* seemingly stands alone in eschewing actual knowledge and allowing a broader claim to proceed.").  Under either standard, the proper inquiry is "whether the defendant-institution's policy or custom inflicted the injury of which the plaintiffs complain."  *Doe 1–10 v. Baylor Univ.*, 240 F. Supp. 3d 646, 661 (W.D. Tex. 2017).

Plaintiffs have not alleged enough concrete facts to establish that the District had an official policy or custom of deliberate indifference which created a heightened risk that the Doe Children would be sexually assaulted.  Although they are highly relevant and deeply troubling if true, many of Plaintiffs' allegations must be disregarded at this stage because they are conclusory.  *See* Dkt. # 38, at ¶¶ 120, 121, 122, 124, 262 (hazing was "well-known" by Defendant Coaches; Defendant Coaches "knew" and "were aware" that "Code Blue" was a long-standing custom; "teachers, students, and coaches, and on information and belief, authorities at [Plainfield Central] . . . also knew about

16

the 'Code Blue' hazing ritual"; Defendant Coaches "were aware of the meaning and prevalence of the 'Code Blue' hazing ritual"); *see also Doe I on behalf of Doe II v. Huntington Ind. Sch. Dist.*, 2020 WL 10317505, at *5 (E.D. Tex. 2020) (disregarding allegations such as "it was well known"; "perpetuation of a culture in which athletes were protected from allegations of misconduct"; "HISD's failure to address and active concealment of sexual violence.").

The Second Amended Complaint is missing facts tending to show that the District ignored reports of sexual harassment within the athletic department. There are no allegations, for example, that other students reported sexual assaults prior to the Doe Children's assaults and the District maintained a policy of mishandling those reports. The conclusory allegations that the Defendant Coaches and the District were aware of "Code Blue," without more, are insufficient to establish the existence of an official policy that created a heightened risk the Doe Children would be sexually assaulted. Count IX is dismissed.

### b. Post-Assault Deliberate Indifference: Counts X and XI

Defendants argue that once the District had actual knowledge of the sexual assaults, its response was not deliberately indifferent because the Defendant Coaches immediately took action after learning of the attacks, school administrators were notified, the parents were contacted, a meeting was held the next morning, and four offending students were suspended.

Plaintiffs, on the other hand, fault the Defendant Coaches for speaking to only the Doe Children after the assaults and not asking other players if they knew what happened. They are also critical of the District's characterization of the assaults as an "incident" rather than a "sexual assault" when the parents were contacted. According to Plaintiffs, there is no indication that Plainfield Central or the District conducted any type of Title IX investigation; instead, the matter was referred to the SRO and the Plainfield PD. Additionally, Plaintiffs allege that the District failed to "develop or implement a safety plan, did not inform Plaintiffs of their rights under Title IX or provide information about the school's Title IX coordinator, and did not provide any information regarding services, accommodations, or supportive measures that victims of sexual assault may need to ensure that their educational opportunities were not injured or limited by their assaults." Dkt. # 48, at 12–13.

A response to a report of sexual harassment, or lack thereof, is considered deliberately indifferent only if it "is clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 648. This is "a high bar." *Doe v. Galster*, 768 F.3d 611, 617 (7th Cir. 2014). Deliberate indifference "is not a mere reasonableness standard." *Gabrielle M. v. Park Forest-Chicago Heights, IL Sch. Dist.*, *163*, 315 F.3d 817, 824 (7th Cir. 2003). It is akin to "an official decision by the recipient not to remedy the violation." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998). Deliberate indifference might be shown if the funding recipient makes "no effort whatsoever either to investigate or to put an end to the harassment." *Davis*, 526 U.S. at

654. "Responses that are not reasonably calculated to end harassment are inadequate." *Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 669 (2d Cir. 2012) (finding deliberate indifference where school district repeatedly gave the same ineffective warnings in response to known racial harassment).

A funding recipient, however, is not required "to remedy peer harassment" or "suspend or expel every student accused of misconduct." *Gabrielle M.*, 315 F.3d at 825. Allowing peer-on-peer sexual harassment suits under Title IX "does not mean that recipients [of federal funds] can avoid liability only by purging their schools of actionable peer harassment or that administrators must engage in particular disciplinary action," nor does it allow victims "to make particular remedial demands." *Davis*, 526 U.S. at 648. Rather, "courts should refrain from second-guessing disciplinary decisions made by school administrators." *Id.*

Taking Plaintiffs' allegations as true, and considering the serious nature of the allegations, Plaintiffs have plausibly alleged the District acted with deliberate indifference to the sexual assaults. Indeed, just because the school made *some* effort does not necessarily preclude a finding of deliberate indifference. *See Bowe v. Eau Claire Area Sch. Dist.*, 2018 WL 791416, at *4 (W.D. Wis. 2018) ("Nominal action could be clearly unreasonable in some circumstances, as in *Davis*, when the school merely 'threatened' a male student who repeatedly sexually harassed the plaintiff by speaking to her in vulgar language, rubbing against her in a sexually suggestive behavior, and attempting to touch her breasts and genital area."); *see also Figgs v.*

*Dawson*, 829 F.3d 895, 903 (7th Cir. 2016) ("A state officer is deliberately indifferent when he does nothing or when he takes action that is so ineffectual under the circumstances that deliberate indifference can be inferred.") (citation omitted).

A reasonable jury could find that the District's alleged failure to separate the assailants from the Doe Children, failure to discipline all players involved in the assault, failure to conduct any independent investigation into the events, and failure to assist and support the Doe Children following the assaults was clearly unreasonable in light of the circumstances.[4]  Plaintiffs certainly face an uphill battle with this count, but for now they have alleged enough to get them out of the gate.  Defendants' Motion to Dismiss is denied as to Counts X and XI.

### c.  Post-Assault Retaliation: Counts XII and XIII

It is well-settled that retaliatory conduct is within the broad prohibition of "discrimination" made unlawful by Title IX.  *Jackson v. Birmingham Bd. of Educ.*, 544

---

[4] This conclusion aligns with other courts' recognition that a school's failure to separate an alleged victim and attacker could support a claim of deliberate indifference.  *See, e.g.*, *Zeno*, 702 F.3d at 671 (holding that the jury's finding of deliberate indifference was supported by the record based in part on the fact that the school's "remedial actions were little more than half-hearted measures"); *Wills v. Brown Univ.*, 184 F.3d 20, 37 (1st Cir. 1999) ("the continuing presence of the harasser may so alter the terms and conditions of education that the victim of harassment may be able to establish a claim for sex discrimination"); *Cavalier v. Catholic Univ. of Am.*, 306 F. Supp. 3d 9, 32–33 (D.D.C. 2018) (concluding that the plaintiff plausibly alleged deliberate indifference by pleading that the university failed to maintain and enforce a no-contact order against the classmate who allegedly sexually assaulted the plaintiff); *Goodwin v. Pennridge Sch. Dist.*, 309 F. Supp. 3d 367, 375 (E.D. Pa. 2018) ("Drawing all reasonable inferences in Goodwin's favor, [the defendants] exacerbated the hostile environment when they continued to allow Goodwin's harassers to be near her."); *Butters v. James Madison Univ.*, 208 F. Supp. 3d 745, 760 (W.D. Va. 2016) ("a university's failure to separate an alleged victim and attacker during a grievance process could support a claim of deliberate indifference."); *Doe v. Manor Coll.*, 479 F. Supp. 3d 151, 164–65 (E.D. Pa. 2020) ("A failure to accommodate a student's safety concerns, for instance, by failing to separate a student from her alleged assailant, may amount to deliberate indifference.").

U.S. 167, 174 (2005). To establish a Title IX retaliation claim Plaintiffs must show: (1) the Doe Children engaged in protected activity under Title IX; (2) the District took a materially adverse action against them; and (3) there was a but-for causal connection between the two. *Doe v. Columbia Coll. Chicago*, 933 F.3d 849, 857 (7th Cir. 2019) (citing *Burton v. Bd. of Regents of the Univ. of Wis. Sys.*, 851 F.3d 690, 695 (7th Cir. 2017)). "[A]n adverse action is one that a reasonable [student] would find to be materially adverse such that the [student] would be dissuaded from engaging in the protected activity." *Burton*, 851 F.3d 690, 696 (7th Cir. 2017) (quotation marks omitted) (emphasizing that "[n]ot everything that makes [a student] unhappy is an actionable adverse action") (first alteration in original) (quotation marks omitted). As for the third element, "a Title IX retaliation claim fails if the plaintiff has not alleged some retaliatory motive connecting the protected activity to the adverse action." *O'Shea v. Augustana Coll.*, 593 F. Supp. 3d 838, 850–51 (C.D. Ill. 2022) (cleaned up).

Plaintiffs allege that they engaged in a protected activity by reporting the sexual assault and that the District took materially adverse actions against the Doe Children by: failing to stop the threats and harassment from the varsity assailants immediately after the sexual assaults were reported; failing to investigate the Doe Children's claims beyond referring them to the police; and refusing to allow the Doe Children to transfer schools or provide relevant factual information regarding the sexual assaults on an athletic release form.

The District does not dispute that the Doe Children engaged in a protected activity, but argues Plaintiffs do not allege that the District took materially adverse actions against them, nor have they alleged that but-for their complaint of harassment, such action would not have been taken.

Missing from the Second Amended Complaint are allegations that would plausibly suggest a retaliatory motive was the impetus for the actions Plaintiffs complain of, assuming without deciding that those actions are materially adverse. Without a retaliatory motive, Plaintiffs' claims fail. *See Doe v. Columbia Coll.*, 299 F. Supp. 3d 939, 960 (N.D. Ill. 2017) (St. Eve, J.), *aff'd*, 933 F.3d 849 (7th Cir. 2019) (recognizing that intentional inaction may be the basis of a retaliation claim but granting motion to dismiss for failure to plead a "retaliatory motive."). Counts XII and XIII are dismissed.

### d.  Direct Sex-Based Discrimination: Count XIV

Plaintiffs do not respond to any of Defendants' arguments in support of dismissal of their direct sex-based discrimination claim, and so the Court deems the claim abandoned. *See Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999) ("If [a court] is given plausible reasons for dismissing a complaint, [the court is] not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning."); *Mathis v. New York Life Ins. Co.*, 133 F.3d 546, 548 (7th Cir. 1998) ("A litigant who fails to press a point by supporting it with pertinent authority or by showing why it is sound despite a lack of supporting

authority forfeits the point.") (cleaned up); *Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1075 (7th Cir. 2013) (claims waived where party asserting them "did not provide the district court with any basis to decide" them and "did not respond to [the opposing party's] arguments"). Count XIV is dismissed.

## III.    State Law Claims

Counts I-IV are entitled "Willful and Wanton Conduct." Illinois, however, does not recognize a "separate and independent tort of willful and wanton conduct." *Doe v. Bd. of Educ. of City of Chi.*, 2020 WL 1445638, at *14. Rather, "willful and wanton conduct constitutes an aggravated form of negligence upon which a plaintiff can recover damages by alleging—and later proving—the elements of a negligence claim and a deliberate intention to harm or an utter indifference to or conscious disregard for the welfare of the plaintiff." *Doe v. Thorton Twp. High Sch. Dist. 205 Bd. of Educ.*, 2021 WL 1172608, at *5 (N.D. Ill. 2021) (cleaned up). As Plaintiffs do not allege separate claims of negligence, the Court construes Counts I-IV as claiming negligence based upon willful and wanton conduct. *See id.*

Plaintiffs allege the Defendant Coaches (as well as the District, under a theory of *respondeat superior*) breached their duty to the Doe Children in one or more of the following ways:

- Knew or should have known that by not monitoring the locker room, acts of bullying, harassment, and sexual assault could occur;
- Knew or should have known about the traditions of Plainfield Central, which included hazing and bullying of a sexual nature;

23

- Knew or should have known that bullying and hazing was so prevalent that unwilling participants were forced to take part in acts that were assaultive, illegal, and often sexual in nature;
- Knew or should have known that their failure to monitor the locker rooms of Plainfield Central posed a high probability of serious harm to students, including the Doe Children
- Recklessly or consciously disregarded the substantial risks posed by failing altogether to monitor the locker rooms of Plainfield Central;
- Recklessly or consciously disregarded the substantial risks that actions were perpetrated against the Doe Children
- Knew or should have known they were violating District policy by allowing the tradition of "Code Blue" to occur and continue unreported; and/or
- Were otherwise willful and wanton in their conscious disregard of the safety of the Doe Children.

Defendants argue Plaintiffs fail to allege sufficient facts to support an inference of willful and wanton conduct and, even if the allegations are sufficient, Defendants are nevertheless immune from such claims under various provisions of the Illinois Tort Immunity Act, 745 ILCS 10/1-101 *et seq.*

### a. Willful and Wanton Conduct

Plaintiffs' Second Amended Complaint does not plead facts establishing a deliberate intention to harm the Doe Children; therefore, the issue is whether Plaintiffs alleged enough facts to plausibly support an inference of "utter indifference to or conscious disregard for" the Doe Children's safety. *See Spinka v. Drake*, 2016 WL 1258460, at *4 (S.D. Ill. 2016).

"[W]illful and wanton conduct differs from mere negligence in that it requires a conscious choice of a course of action, either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to

any reasonable man." *Barr v. Cunningham*, 2017 IL 120751, ¶ 20 (cleaned up). Under Illinois law, "a teacher's mere act of leaving children unsupervised is not sufficient to establish willful and wanton misconduct . . . The general allegation that a teacher should have known the harm would occur without adult supervision is insufficient to satisfy this [willful and wanton] standard." *Knapp v. Hill,* 276 Ill. App. 3d 376, 384 (1st Dist. 1995) (citing *Jackson v. Chi. Bd. of Educ.*,192 Ill. App. 3d 1093, 1100 (1st Dist. 1989)). Thus, a plaintiff must plead more to withstand dismissal of a willful and wanton claim. *Spinka*, 2016 WL 1258460, at *4.

Again, while Plaintiffs allege over and over that the Defendant Coaches knew of the "Code Blue" tradition and allowed it to continue unabated, missing from the Second Amended Complaint is *how* the Defendant Coaches came to have such knowledge. Plaintiffs' allegations in this regard are conclusory and lacking the "further factual enhancement" necessary to permit the inference that the Defendant Coaches acted with "utter indifference to or conscious disregard" for the Doe Children's safety in failing to monitor the locker room. *See Twombly*, 550 U.S. at 555.

### b. The Illinois Tort Immunity Act ("Act")

The Act "governs whether and in what situations local governmental units are immune from civil liability." *Reyes v. Bd. of Educ. of City of Chi.*, 2019 IL App (1st) 180593, ¶ 25 (cleaned up). Without sufficient allegations of willful and wanton conduct, Counts I-IV boil down to claims for negligent supervision. Defendants argue Section 3-108 of the Act immunizes their conduct, and the Court agrees. That section

provides immunity for public entities and employees who supervise an activity on public properties. 745 ILCS 10/3-108. On negligence claims, courts have interpreted Section 3-108 broadly to cover claims for failure to provide supervision. *See, e.g.*, *Doe ex rel. Ortega-Piron v. Chi. Bd. of Educ.*, 213 Ill. 2d 19, 28 (2004) (holding that Section 3-108 applied where plaintiff alleged that the Board's failure to provide supervision—by way of a bus attendant—proximately caused plaintiff to be sexually assaulted); *Doe I v. Bd. of Educ. of City of Chi.*, 364 F. Supp. 3d at 866 (holding that Section 3-108 immunizes Board from claims for negligent failure to control and to supervise school employee). Counts I-IV are dismissed.

## IV.    Requests for Emotional Distress or Reputational Damages in Title IX Claims

Defendants argue that in the event Plaintiffs' Title IX claims are allowed to proceed, any request for emotional distress or reputational damages must be stricken. The Court need not address this issue now, though, and so leaves the decision for a different day.

## V.    The Doe Parents' Individual Claims

Finally, although the Doe Parents claim to be suing on their own behalf as well as on behalf of the Doe Children, they fail to allege any facts to support a claim for their own constitutional injuries. Therefore, the individual claims of the Doe Parents are dismissed.

## **CONCLUSION**

For the foregoing reasons, the Court grants Defendants' Motion to Dismiss [24] in part and denies it in part. Counts I–IX, and XII–XIV are dismissed. The dismissals are without prejudice. Counts X and XI remain. Status is set for 3/23/2023 at 10:00 a.m.

It is so ordered.

Dated: March 9, 2023

Charles P. Kocoras
United States District Judge